ACCEPTED
04-14-00655-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/8/2015 8:28:17 PM
KEITH HOTTLE
CLERK

# No. 04-14-00655-CV

*On Appeal to the Fourth Court of Appeals*

*San Antonio, Texas*

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
3/9/2015 11:00:00 AM
KEITH E. HOTTLE
Clerk

Ivarene and Victor Hosek,
Appellants

v.

Rosale Scott,
Appellee

On Appeal from the 81st Judicial District Court of Atascosa County, Texas, Trial Court No. 13-06-0559-CVA, the Honorable Fred Shannon, Presiding

## Appellants' Brief

Respectfully submitted,
THE CHIMENE LAW FIRM
Michele Barber Chimene
TBN 04207500
15203 Newfield Bridge Ln.
Sugar Land, TX. 77498
PH: (713) 474-5538; no fax available
michelec@airmail.net

COUNSEL FOR APPELLANTS,
THE HOSEKS

**Oral Argument Requested**

No. 04-14-00655

*Hosek v. Scott*

In the Trial Court:

Plaintiffs/Appellants:

Ivarene and Victor Hosek

Trial Counsel:

Robert J. Ogle
TBN 15231350
bob@ogleattorney.com
508 E. San Antonio St.
Boerne, TX. 78006

Defendant/ Appellee:

Rosale Scott

Trial Counsel:

G. Wade Caldwell
TBN 03621020
gcaldwell@beclaw.com
Raquel G. Perez
TBN 00784746
rperez@beclaw.com
Zachary Fanucchi
TBN 24028548
zfanucchi@beclaw.com
Barton, East & Caldwell, P.L.L.C.
One Riverwalk Place, Ste. 1825
700 N. St. Mary's St.
San Antonio, TX. 78205

Additional Appellate Counsel for the Hoseks on Appeal:

Michele Barber Chimene
TBN 04207500

IDENTITY OF PARTIES, cont'd.

[michelec@airmail.net](mailto:michelec@airmail.net)

The Chimene Law Firm

15203 Newfield Bridge Ln.

Sugar Land, TX. 77498

# TABLE OF CONTENTS

## Contents

IDENTITY OF PARTIES.................................................................................................................i

TABLE OF CONTENTS............................................................................................................. iii

INDEX OF AUTHORITIES.......................................................................................................... v

STATEMENT OF THE CASE...................................................................................................... vi

STATEMENT ON ORAL ARGUMENT...................................................................................... vi

ISSUES PRESENTED................................................................................................................. vii

STATEMENT OF FACTS ............................................................................................................. 1

SUMMARY OF ARGUMENT ...................................................................................................... 3

ARGUMENT & AUTHORITIES .................................................................................................. 5

   ARGUMENT ON FIRST & SECOND ISSUES ......................................................................... 5

     The trial court erred in granting summary judgment in favor of Ms. Scott
because the petition deed is ambiguous and the summary judgment evidence
establishes that a general issue of material fact exists whether the minerals reverted
to the surface owner after twnety-five years and cessation of produc-
tion. ..................................................................................................................................... 5

     This summary judgment was harmful error because the partition deed was
ambiguous and summary judgment evidence conclusively establishes that
the minerals reverted to the surface owner after the expiration of 25 years ....................... 5

   STANDARD OF REVIEW ON FIRST AND SECOND ISSUES............................................. 5

   ARGUMENT & AUTHORITIES: ............................................................................................ 6

   ARGUMENT AND AUTHORITIES ON THIRD ISSUE:..................................................... 13

     The trial court abused its discretion in awarding attorneys' fees because
sides benefitted equally from an interpretation of the deed and an award to
Ms. Scott was not fair and equitable. ............................................................................... 13

   STANDARD OF REVIEW ON THIRD ISSUE: .................................................................... 13

   ARGUMENT & AUTHORITIES: .......................................................................................... 13

   ARGUMENT & AUTHORITIES ON FOURTH ISSUE:....................................................... 15

     The trial court abused its discretion in allowing the possibility of forcing the Hoseks to pay the costs
of necessary and irrelevant documents which were included in the record at the demand of Ms.
Scott's counsel merely to raise
the cost of the appeal for the Hoseks. ............................................................................... 15

STANDARD OF REVIEW ON FOURTH ISSUE: ................................................................. 15

ARGUMENT & AUTHORITIES: ................................................................................ 15

CONCLUSION & PRAYER ............................................................................................ 17

CERTIFICATE OF COMPLIANCE ................................................................................ 18

CERTIFICATE OF SERVICE ......................................................................................... 18

APPENDIX: ..................................................................................................................... 20

# INDEX OF AUTHORITIES

## Cases

*Bagby v. Bredhauer*, 627 S.W.2d 190 (Tex. App. – Austin 1981, no writ) .................................................. 10

*Berrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122 (Tex. App – Corpus Christi 2006, pet denied) .......... 6

*Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998) ...................................................................................... 13

*Brown v. Havard*, 593 S.W.2d 939 (Tex. 1980) ........................................................................................ 7

*City of Temple v. Taylor*, 268 S.W.3d 852 (Tex. App. – Austin 2008, pet. denied) ................................. 13

*DeWitt Cty. Elec. Co-Op, Inc. v. Parks*, 18 S.W.3d 96 (Tex. 1999) ........................................................... 7

*Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280 (Tex. 1996) ..................................................... 6

*Frost Nat'l Bank v. L & F Distribs, Ltfd.*, 165 S.W.3d 310 (Tex. 2005) ...................................................... 8

*Houchins v. Devon Energy Prod. Co., LP*, No. 01-08-00273-CV, 2009 Tex. App. LEXIS 8064 (Tex. App. –Houston [1st Dist.] Oct. 15, 2009, pet denied) ...................................................................................... 7

*J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223 (Tex. 2003) .................................................................... 6

*Luckel v. White*, 819 S.W.2d 459 (Tex. 1991) .......................................................................................... 8

*National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517 (Tex. 1995) ................................................ 11

*Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508 (Tex. 1995) ............................................................. 6

*Plainsman Trading Co. v. Crews*, 898 S.W.2d 786 (Tex. 1995) ................................................................. 8

*Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211 (Tex. 2003) ................................................. 5

*Reilly v. Rangers Mgmt, Inc.* 727 S.W.2d 527 (Tex. 1987) ....................................................................... 9

*Rio Bravo Oil Co. v. Weed,* 121 Tex. 427 (Tex. 1932) ......................................................................... 10-11

*San Antonio St. Ry Co. v. Adams*, 87 Tex. 125 (Tex. 1894). ................................................................... 12

*Securtec, Inc. v. County of Gregg*, No. 06-01-00164-CV, 2002 Tex. App. LEXIS 8812 (Tex. App. – Texarkana Dec. 11, 2002, no pet.) ........................................................................................................ 14

*T C Dallas #1, LP v. Republic Underwriters Ins. Co.*, 316 S.W.3d 832 (Tex. App. – Dallas 2010, no pet.) .......................................................................................................................................................... 6

*Tanglewood Homes Ass'n v. Henke*, 728 S.W.2d 39 (Tex. App. – Houston [1st Dist.] 1987, writ ref'd n.r.e.) ................................................................................................................................................... 14

*Terrill v. Tuckness*, 985 S.W.2d 97 (Tex. App. – San Antonio 1998, no pet.) ............................................ 6

*Thomason v. Bradgett*, No. 02-12-00303-CV, 2013 Tex. App. LEXIS 8576 (Tex. App. – Fort Worth July 11, 2013, pet. denied) ........................................................................................................................... 8

*Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951) ................................................... 7, 11

*Western Invs. v. Urena*, 162 S.W.3d 547 (Tex. 2005) ............................................................................... 6

## Statutes

Tᴇx. Cɪv. Pʀᴀᴄ & Rᴇᴍ. Cᴏᴅᴇ § 37.001 et seq ............................................................................................ v

## Rules

TEX. R. CIV. P. 166(a) .............................................................................................................................. 4

## STATEMENT OF THE CASE

*Trial Court:*

This case was a declaratory judgment action under Texas Civil Practice and Remedies Code § 37.001 *et seq..* (CR 1-5). The Hoseks requested construction of a deed of partition to determine whether they owned all or half of the minerals under their land in Atascosa County. (CR 75-77). Partial summary judgment was granted in favor of Ms. Scott owning an undivided one-half interest in the minerals under the Hoseks' land. (Supp. CR 89-90). A hearing was held on the issue of attorneys' fees, (RR 1-60), after which Judge Shannon awarded Ms. Scott attorneys' fees of $39,500, plus $2,500 if a Motion for New Trial was filed, 12,500 for appeal to this court, $3,500 if petition for review was filed, and $12,500 if the petition was granted. (CR 208-213). Final Judgment was June 19, 2014. (CR 212).

*Post-trial and appeal:*

Finding of Facts and Conclusions of Law were requested. (CR 227). The Hoseks filed a Motion for New Trial. (CR 248-250). The Court made Findings of Fact only as to attorney fees. (CR 345; 405-12). Notice of Appeal was filed on June 19, 2014. (CR 415).

## STATEMENT ON ORAL ARGUMENT

The Hoseks believe that the issues in this case are straightforward and that oral argument will not help decide the case. However, if Ms. Scott is granted oral argument, the Hoseks wish to be allowed to argue.

# ISSUES PRESENTED

The trial court erred in granting summary judgment in favor of Ms. Scott because the partition deed is ambiguous and summary judgment evidence establishes that a genuine issue of fact exists whether the minerals reverted to the surface owner after the expiration of 25 years and cessation of production.[1]

This summary judgment was harmful error because the partition deed is ambiguous and summary judgment evidence conclusively establishes that the minerals reverted to the surface owner after the expiration of 25 years and cessation of production.

The trial court abused its discretion in awarding attorneys' fees because both sides benefitted equally from an interpretation of the deed and an award to Ms. Scott was not fair and equitable.

The trial court abused its discretion in allowing the possibility of forcing the Hoseks to pay the costs of unnecessary and irrelevant documents which were included in the record at the demand of Ms. Scott's counsel merely to raise the cost of the appeal for the Hoseks.

---

[1] There was no actual production during the twenty-five year period to extend the agreement not to partition.

# No. 04-14-00655-CV

Ivarene and Victor Hosek,
Appellants

v.

Rosale Scott,
Appellee

On Appeal from the 81st Judicial District Court of Atascosa County, Texas, Trial Court No. 13-06-0559-CVA, the Honorable Fred Shannon, Presiding

TO THE HONORABLE COURT OF APPEALS:

COME NOW, IVARENE and VICTOR HOSEK, and file this, their Appellants' Brief in the above-referenced case. The Hoseks will show as follows:

## STATEMENT OF FACTS

On October 4, 1978, Fridolin Alex Voigt and his wife, Pearl Schnautz Voigt, deeded the family farm to their children, Ivarene Voigt Hosek (and her husband Victor) and Rosale Voigt Scott, in equal undivided shares. (Supp CR 16; 45). The Hoseks and Ms. Scott then partitioned the tract, but made an agreement not to partition the minerals for twenty-five years or so long as production continued.

1

(Supp. CR 19-24; 45). Because the twenty-five years started with the present, the partition deed did not partition the minerals, and they were severed from the surface estate. (Supp. CR 20-22). The partition read as follows:

> "This partition does not include any of the oil, gas, or other minerals in, on or under the above described tract of land, and same are to remain undivided for a period of twenty-five years from the date hereof and as long thereafter as oil, gas, or other minerals are produced in paying quantities from the above described lands."

(Supp. CR 20-22). The deed was unclear what happened to the minerals after the twenty-five years was up. The intent of the deed was clearly a partition of interests, (Supp. CR 19-24), yet did the statement that the partition did not include the minerals just mean that the minerals were not partitioned during the time the parties had agreed to not partition them, or did it leave them unpartitioned forever? And if they were left unpartitioned forever, why was a twenty-five year period mentioned, instead of just saying that the deed did not partition the minerals? This was an ambiguity that would much later cause an oil company landman to send a quit claim deed to Ms. Scott for signature, and begin this lawsuit, but up until the quit claim deed, the parties treated the minerals in similar fashion.

After the twenty-five years had passed, (in 2004), both parties treated the land as though the minerals had reverted to the respective surface owners. Ms. Scott sold parts of her property to the Moraleses in 1986, (Supp. CR 28), and to the Kings in 1990. (Supp. CR 31). She told the buyers that they would own the 50% of the

2

minerals owned by the Hoseks under Ms. Scott's tract after the twenty-five years expired. (Supp. CR 49, 62, 64, and 78). The buyers paid Ms. Scott, not Ms. Hosek, for the minerals. (Supp. CR 50). Ms. Scott even asked the Hoseks to ignore the agreement to not partition and have the minerals revert to the surface owner before the twenty-five years were up so that she could please her buyer and convey 100% of the minerals immediately. (Supp. CR 73-76). There are even current wells pooled with the land Ms. Scott sold, and the Hoseks are not getting paid any royalties on the hydrocarbons produced, because all parties have treated the minerals as reverting to the surface owner. Only when oil was found on the Hoseks' land, and an oilman asked Ms. Scott to sign a quit claim deed to cure the ambiguity in the poorly-drafted Partition Deed did Ms. Scott make her claim. (Supp. CR 50).

## SUMMARY OF ARGUMENT

The Partition Deed at the heart of this case, (Supp. CR 19-24), is ambiguous because it does not say what happens to the minerals after a twenty-five year agreement not to petition and two possibilities are valid: (1), the Partition is completed and the minerals revert to the surface owner, or (2) the minerals stay unpartitioned forever. The trial court erred in saying the deed was unambiguous. This brief discusses the many rules of contract interpretation which cause the deed to be ambiguous.

Subsequent treatment of the minerals by the parties before the conflict arose provides airtight proof as to what the parties intended. Ms. Scott told two buyers for her land that the minerals would revert to the surface owner, and after the twenty-five years were up, they would own the minerals. Ms. Scott attempted to bring to a close the agreement not to partition the minerals before the twenty-five years were up, so as to give what was the temporarily the Hosek's minerals to the buyer immediately. If the minerals did not revert to the surface owners, Ms. Scott has sold the Hosek's minerals under Ms. Scott's land without paying the Hoseks for them, and there are now wells pooled on that land that the Hoseks also aren't getting paid for. The landmen for current wells believe that the Hoseks own all the minerals under their tract and the buyers own all the minerals under Ms. Scott's tract. They only gave Ms. Scott a quit claim deed to sign because the deed was ambiguous. The trial court's summary judgment should be reversed and the Hoseks found to own the minerals (100%) under their land.

Both parties needed this ambiguous deed interpreted, so attorneys' fees should not have been awarded to either side. Such was not equitable and just.

The costs of an unnecessarily-long Clerk's Record requested by Ms. Scott's counsel should not be assessed against the Hoseks. This point is not moot because the appellate court could still do this, and such would not be just and equitable. Expanding the record beyond what was proper was just one of the many techniques

4

of gamesmanship Ms. Scott's counsel used to make the appeal cost the Hoseks more than it should.

## ARGUMENT & AUTHORITIES

## ARGUMENT ON FIRST & SECOND ISSUES

> The trial court erred in granting summary judgment in favor of Ms. Scott because the partition deed is ambiguous and summary judgment evidence establishes that a genuine issue of fact exists whether the minerals reverted to the surface owner after the expiration of 25 years and cessation of production.[2]

> and

> This summary judgment was harmful error because the partition deed is ambiguous and summary judgment evidence conclusively establishes that the minerals reverted to the surface owner after the expiration of 25 years and cessation of production.

## STANDARD OF REVIEW ON FIRST AND SECOND ISSUES

To prevail on a summary judgment, the movant is required to prove that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166(a). The appellate court reviews the trial court's grant of a summary judgment *de novo*. *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215 (Tex. 2003). In reviewing a summary judgment, the Court

---

[2] Again, noting that there was no production during the twenty-five years.

5

must accept as true evidence favoring the non-movant, indulging in every reasonable inference and resolving all doubts in the non-movant's favor. *Park Place Hosp. v. Estate of Milo*, 909 S.W.2d 508, 510 (Tex. 1995); *Western Invs. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

When an instrument is unambiguous, and the dispositive facts are not in dispute, a court may grant summary judgment and render a declaratory judgment regarding the parties' rights under the instrument. *Berrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 131-32 (Tex. App – Corpus Christi 2006, pet denied); *T C Dallas #1, LP v. Republic Underwriters Ins. Co.*, 316 S.W.3d 832, 837 (Tex. App. – Dallas 2010, no pet.). Extrinsic evidence of intent is admissible if the deed is ambiguous on its face. *Friendswood Dev. Co. v. McDade & Co.*, 926 S.W.2d 280, 283 (Tex. 1996).

ARGUMENT & AUTHORITIES:

In construing a written agreement, we must ascertain and give effect to the parties' intentions as expressed in the agreement. *Terrill v. Tuckness*, 985 S.W.2d 97, 101 (Tex. App. – San Antonio 1998, no pet.). The Hoseks believe that the Partition Deed is ambiguous. (Supp. CR 21-22). Deciding whether a deed is ambiguous is a question of law for the courts. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). The court may look to principles of contract interpretation to determine whether a deed term is ambiguous. *Brown v. Havard*,

6

593 S.W.2d 939, 942 (Tex. 1980).  A deed term is not ambiguous because of a simple lack of clarity.  *DeWitt Cty. Elec. Co-Op, Inc. v. Parks*, 18 S.W.3d 96, 100 (Tex. 1999).  A deed term is not ambiguous simply because the parties disagree on its meaning.  *Houchins v. Devon Energy Prod. Co., LP*, No. 01-08-00273-CV, 2009 Tex. App. LEXIS 8064 (Tex. App. – Houston [1ˢᵗ Dist.] Oct. 15, 2009, pet denied).  An ambiguity arises only after the application of established rules of construction leave a deed susceptible to more than one meaning.  *Id.; Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951).  For an ambiguity to exist, both potential meanings must be reasonable.  *Id.*

The conflict over the interpretation of the Partition Deed arises out of the failure of the document to state what will occur after the expiration of the twenty-five year period and cessation of production.  (Supp. CR 21-22, *infra*, pg. 2).  Either the mineral rights revert to the surface owner or they do not.  The conflict also arises as to whether the phrase, "This partition does not include any of the oil, gas, or other minerals in, on or under the above described tract of land…" stands on its own, to leave the minerals undivided until another act partitions them, or whether it is over-riding that this phrase is joined with the conjunction "and" with "same are to remain undivided for a period of twenty-five years…" to mean that the minerals are undivided only for the twenty-five years set out in the same sentence.

Arguing for ambiguity are the following principles of deed interpretation:

(1) Texas courts apply the "four corners" rule, *Luckel v. White*, 819 S.W.2d 459 (Tex. 1991), and (a) look not at isolated terms but consider the instrument as a whole, (b) to convey on the grantee the greatest estate that the terms of the deed will permit. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995); *Thomason v. Bradgett*, No. 02-12-00303-CV, 2013 Tex. App. LEXIS 8576 (Tex. App. – Fort Worth July 11, 2013, pet. denied). The phrase "This partition does not include any of the oil, gas, or other minerals in, on or under the above described tract of land…" is an isolated phrase. (Supp. CR 21-22). It should not be interpreted alone from the phrase to which it is joined: "same are to remain undivided for a period of twenty-five years…" (Supp. CR 21-22). It also should not be allowed to contradict the patent purpose of the document: to partition the estate. While on first blush, the fact that the partition is said to not include the minerals may be interpreted to mean the minerals are never partitioned, if the whole document is read harmoniously, *Frost Nat'l Bank v. L & F Distribs, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005), the isolated phrase that the minerals are not partitioned should be read with the phrase which immediately follows it and with the fact that this is a partition deed. This gives the equally logical interpretation that the minerals are not partitioned for twenty-five years to allow for sharing of current production, but that

8

they *are* partitioned after twenty-five years, to accomplish full partitioning of the estates, the stated goal of the document. (Supp. CR 19-24).

(2) The consideration of the whole document, in harmony, comes from "a utilitarian standpoint bearing in mind the particular business activity sought to be served, and a court will avoid when possible and proper a construction which is unreasonable, unequitable, and oppressive." *Reilly v. Rangers Mgmt., Inc.* 727 S.W.2d 527, 530 (Tex. 1987). While it is inequitable to deprive one party of presently-occurring or soon-to occur production that they may be counting on, (although this turned out to be wishful thinking), it is oppressive to omit the minerals from eventual partition, when two people who may have different businesses and different goals are trying to partition their estates.

(3) There is the presumption that when lands are partitioned among co-owners, the whole of the land is partitioned, unless some portion of the land is expressly excepted from the partition. *Pewitt v. Renwar Oil Corp.*, 261 S.W.2d 904, 906 (Tex. Civ. App. – Houston 1962, writ ref'd n.r.e.). In this case, reading entire sentences as a whole, the only thing that is expressly excepted are the minerals *for twenty-five years*. (Supp. CR 19-24).

(4)  The presumption is that the grantor, (Ms. Scott in the case of the land the Hoseks will receive), intends to convey to her grantee (the Hoseks) all of the appurtenant rights incident to the beneficial enjoyment of property which she had conveyed. *Rio Bravo Oil Co. v. Weed,* 121 Tex. 427 (Tex. 1932).  In this case, conveyance of all of the appurtenant rights would mean the minerals revert to the surface owners after the twenty-five years or production are up.

(5) Where the instrument is capable of two constructions, one of which will give effect to the whole of the instrument while the other would defeat it in whole or in part, preference is given to the construction that will uphold the instrument. *Bagby v. Bredhauer*, 627 S.W.2d 190 (Tex. App. – Austin 1981, no writ).  This is a partition deed, and reverter of the minerals to the respective surface owner after twenty-five years upholds the whole instrument. (Supp. CR 19-24).  Reverter does not ignore the phrase that the minerals are not (presently) partitioned, because that phrase is implemented for the twenty-five years of the agreement not to partition. (Supp. CR 20-22).

Thus, there are two reasonable interpretations of the Partition Deed: one in which the minerals remain unpartitioned after the twenty-five years (thwarting the full effect of partition) and one in which the minerals revert to the

10

respective surface owner after the twenty-five years are up (giving full life to the partition document). Therefore, the Partition Deed is ambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951). The trial court erred in finding that it was unambiguous.

If a contract or deed is ambiguous, then parol evidence is admissible for the purpose of ascertaining the true intentions of the parties. *National Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517 (Tex. 1995). Such parol evidence was admitted with the Hoseks' Response to Motion for Partial Summary Judgment. (Supp. CR 42-82). The Affidavit of Alan Cummings, Board Certified Attorney in Oil and Gas and noted Tittle Examiner uses statutory construction similar to just presented to testify that the parties intended the minerals to revert to the surface owner after twenty-five years. (Supp. CR 51). The Affidavit of Ivarene Hosek testifies as to her present understanding, that expressed by her sister at the time, and the present understanding of the oil companies who researched title. (Supp. CR 49-50). All believe that the minerals were intended to revert to the respective surface owner. (Supp. CR. 49-50).

If any doubt exists as to the intention of the grantors, and a deed is ambiguous, a practical and reasonable construction given it by the parties thereto before any controversy has arisen as to its meaning will generally be given controlling effect by the courts. *Rio Bravo Oil*, 121 Tex. at 426-47; *San Antonio St. Ry Co. v. Adams*, 87

11

Tex. 125, 131 (Tex. 1894). There was testimony from several parties, and correspondence written before the controversy arose that the parties treated the minerals as reverted to the surface owners. Ms. Hosek testified via affidavit that her sister told buyers of Ms. Scott's land that they would own all the minerals under Scott's land after reversion. (Supp. CR. 49-50). The deposition testimony of Rosale herself testified that the Hoseks would own the minerals for 14 more years, and then the buyer would get the minerals under the Scott tract. (Supp. CR. 64). There was testimony that Ms. Scott attempted to break the non-partition agreement before the twenty-five years was up so as to be able to transfer all of the minerals under her land to prospective buyers. (Supp. CR. 76). And in a letter to Mr. King, one eventual buyer of Ms. Scott's land and minerals, Ms. Scott told Mr. King he would get all the minerals under the land in fourteen years. (Supp. CR 78-79). This is especially credible because it all occurred before any controversy came up. (Supp. CR 68). The only testimony that Ms. Scott thought the partition would be renegotiated after the twenty-five years, (Supp. CR. 72) came up *after* the conflict arose and much oil money hinged in the balance.

Thus, the great preponderance of the evidence establishes that the intent of the parties was that the Hoseks' minerals have reverted to them and that 100% of the minerals under the Hoseks' land belong to them. Therefore, the deed was originally ambiguous, *not* unambiguous as the trial court decided, and the parol evidence

12

conclusively established that the minerals reverted to the surface owners after twenty-five years. The summary judgment was harmful because there are currently producing oil units into which the minerals under the Hoseks' land are pooled, but half the money due the Hoseks is not being paid to them, due to Ms. Scotts' false claim. (Supp. CR 50). Other royalty owners are also being denied payment and the wells may even be abandoned. (Supp. CR 50). The trial court's summary judgment must be reversed.

## ARGUMENT AND AUTHORITIES ON THIRD ISSUE:

The trial court abused its discretion in awarding attorneys' fees because both sides benefitted equally from an interpretation of the deed and an award to Ms. Scott was not fair and equitable.

## STANDARD OF REVIEW ON THIRD ISSUE:

The standard of review for an award of attorneys' fees on a declaratory judgment is abuse of discretion. *City of Temple v. Taylor*, 268 S.W.3d 852, 858 (Tex. App. – Austin 2008, pet. denied). Whether attorneys' fees are equitable and just is a matter of law. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998). The UDJA does not require an award of attorneys' fees to the prevailing party. *Id.*

## ARGUMENT & AUTHORITIES:

In this case, reversal of the attorneys' fees award is necessary regardless of whether the summary judgment is reversed.

13

If a court reverses a declaratory judgment, it is usually equitable and just to reverse the award of attorneys' fees to the former winner. *Tanglewood Homes Ass'n v. Henke*, 728 S.W.2d 39 (Tex. App. – Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72 (Tex. App. -- Dallas 2001, pet. denied). In this case, if the Court reverses, it is because all parties treated the minerals as having reverted to the surface owner. Ms. Scott even sold mineral interests that she could only sell if the rights had reverted.[3] It was therefore dishonest of her to claim that the minerals did not revert. She should just have signed the quitclaim deed and there never would have been a lawsuit with attorneys' fees. (Supp. CR 49-50). It is not equitable and just to award attorneys' fees to someone whose defense was dishonest.

Even if this Court does not reverse the summary judgment, the attorneys' fees award is not just and equitable and should be reversed. "Just and equitable" should in most cases be tied to the party who caused the necessity of the suit. Where one party caused the suit by having an improper interpretation, they may often be liable for attorneys' fees. However, it is not necessary to award attorneys' fees to the prevailing party. *Securtec, Inc. v. County of Gregg*, No. 06-01-00164-CV, 2002 Tex. App. LEXIS 8812 (Tex. App. – Texarkana Dec. 11, 2002, no pet.). In this case,

---

[3] Her testimony is that she thought she kept her half and only sold the Hoseks' half! (Supp. CR 77).

both parties "caused" the suit in that they both needed the Partition Deed interpreted, regardless of who had the right interpretation, as a 50% interest in minerals was at stake, so there is no party who "caused" the lawsuit more than the other, and no party should receive attorneys' fees. This court should reverse and render on the question of attorneys' fees.

## ARGUMENT & AUTHORITIES ON FOURTH ISSUE:

> The trial court abused its discretion in allowing the possibility of forcing the Hoseks to pay the costs of necessary and irrelevant documents which were included in the record at the demand of Ms. Scott's counsel merely to raise the cost of the appeal for the Hoseks.

## STANDARD OF REVIEW ON FOURTH ISSUE:

A trial judge has discretionary authority to assess court costs against either of the parties or to apportion such costs between them in a fair and equitable manner. *San Antonio Hous. Auth. v. Underwood*, 785 S.W.2d 25 (Tex. App. – San Antonio 1989, no writ).

## ARGUMENT & AUTHORITIES:

Many unnecessary steps were engaged in by opposing counsel in this case in an apparent effort by opposing counsel to raise the cost of the case prohibitively for the Hoseks. For example, Ms. Scott engaged in lengthy tactics to make the Hoseks add parties they did not wish to add, when she could have just added them herself at minimal expense. Ms. Scott's legal bills, which she sought to make the Hoseks pay,

contained duplication and triplication of effort, and even when cut almost in half, were more than those of the Hoseks counsel by more than ten thousand dollars.

The most outrageous effort, however, was a request for approximately sixteen documents which Ms. Scott's counsel asked to be added to the record on appeal. (CR 417). The trial court overruled the Hoseks' objection to these additions and left it an open question whether the Hoseks would be forced to pay for this addition. (CR 427). This was an abuse of discretion, because it was not a fair and equitable addition. It slowed down the appeal and added to the cost for no reason. Ms. Scott had not perfected any appeal. (CR 423). The issues on appeal were two: (1) the interpretation of the Partition Deed and (2) the award of attorneys' fees. (CR 423). Pleadings which had been superseded, or documents, such as documents relevant to abatement or supercedeas, which were not relevant to any issue on appeal, should not have been included in the appellate record and the Hoseks ask that this Court rule that they are not charged the cost of adding these documents to the record, as such would not be fair and equitable and would be an abuse of discretion. Gamesmanship should not be tolerated when it may affect a party's ability (and constitutional right) to present its case. *See Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494 (Tex. App. – San Antonio 2000, orig. proceeding).

## CONCLUSION & PRAYER

Bad drafting of a partition deed created an ambiguous document, contrary to the trial court's conclusion that the deed was unambiguous. A great preponderance of the evidence of how the Hoseks and Ms. Scott treated the deed, before the conflict arose, conclusively established that the minerals reverted to the surface owner after the twenty-five year agreement not to partition included in the deed ended. This evidence proves that the Hoseks own 100% of the minerals under their land, therefore, the trial court's judgment was harmful because it caused an incorrect judgment to result and a whole neighborhood of royalty owners to have their royalty payments withheld – not a small matter when ranching income in the area is currently limited by a pervasive drought.

Both parties needed the deed interpreted, so the award of attorneys' fees against just the Hoseks should be reversed. "Just and equitable" is a question of law, so a judgment proving that neither side should recover attorneys' fees should be entered.

Again, the assessment of costs must be "just and equitable." Therefore a judgment should be entered that the Hoseks not pay for the extra Clerks' Record the counsel for Ms. Scott required.

WHEREFORE, PREMISES CONSIDERED, the Hoseks ask that the summary judgment entered by the trial court be completely reversed, and judgment

entered that the deed is ambiguous and the Hoseks own 100% of the minerals under their land. The Hoseks ask for such other and further relief as may be just.

Respectfully submitted,

_____/s/ MB CHIMENE_____

THE CHIMENE LAW FIRM
Michele Barber Chimene
TBN 04207500
15203 Newfield Bridge Ln.
Sugar Land, TX. 77498
PH: 713 474-5538; no fax
michelec@airmail.net

COUNSEL FOR THE HOSEKS

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief was produced in 14 pt Times New Roman font with the required margins and number of words. There are 5373 words in this brief according to my computer's word counter.

_____/s/ MB CHIMENE_____

## CERTIFICATE OF SERVICE

On this, the 8th day of March, 2014, undersigned counsel has served via ECF and email a true and correct copy of this brief according to the Rules of Civil Procedure on this following, as witnessed by my hand.

G. Wade Caldwell                    rperez@beclaw.com
TBN 03621020                        Zachary Fanucchi
gcaldwell@beclaw.com                TBN 24028548
Raquel G. Perez                     zfanucchi@beclaw.com
TBN 00784746                        Barton, East & Caldwell, P.L.L.C.

One Riverwalk Place, Ste. 1825
700 N. St. Mary's St.
San Antonio, TX. 78205                    _____/s/ MB CHIMENE_____

## APPENDIX:

A     Texas Civil Practice and Remedies Code §§ 37.001 et seq

B     Final Judgment

C     Findings of Fact

D     The Partition Deed

E     Response to Motion for Partial Summary Judgment

## <u>TAB A</u>

A     Texas Civil Practice and Remedies Code §§ 37.001 et seq

Texas Civil Practice & Remedies Code

CPRC 37.001

In this chapter, "person" means an individual, partnership, joint-stock company, unincorporated association or society, or municipal or other corporation of any character

CPRC 37.002

(a) This chapter may be cited as the Uniform Declaratory Judgments Act.
(b) This chapter is remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered;
(c) This chapter shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states that it enact it and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees;

CPRC 37.003

(a) A court of record within its jurisdiction has power to declare rights, status and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the ground that a declaratory judgment or decree is prayed for;
(b) The declaration may be either affirmative or negative in form and effect, and the declaration has the force and effect of a final judgment or decree;
(c) The enumerations in Sections 37.004 and 37.005 do not limit or restrict the exercise of the general powers conferred in this sectionin any proceeding in which declaratory relief is sought and a judgment or decree will terminate the controversy or remove an uncertainty;

CPRC 37.004

(a) A person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status, or other legal relations thereunder;
(b) A contract may be construed either before or after there has been a breach;

(c) Notwithstanding Section 22.001, Property Code, a person described by subsection (a) may obtain a determination under this chapter when the sole issue concerning title to real property is the proper boundary between adjoining properties.

CPRC 37.005

A person interested as or through an executor or administrator, including an independent executor or administrator, a trustee, guardian, other fiduciary, creditor, or of the estate of a decedent, an infant, mentally handicapped person, or insolvent may have a declaration of rights or legal relations in respect to the trust or estate:

(1) To ascertain any class of creditors, devisees, legatees, heirs, next of kin, or others;
(2)  To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity;
(3) To determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings; or
(4) To determine the rights or legal relations of an independent executor or independent administrator regarding fiduciary fees and the settling of accounts.

CPRC 37.0055

(a) In this section, "state" includes any political subdivision of that state.
(b) A district court has original jurisdiction of a proceeding seeking a declaratory judgment that involves:
(1) a party seeking declaratory relief that is a business that is:
   (A) organized under the laws of this state or is otherwise owned by a resident of this state; or
   (B) a retailer registered with the comptroller under Section 151.106, Tax Code;

(2) a responding party that:
(A) is an official of another state and

(B) asserts a claim that the party seeking the declaratory relief is required to collect sales or use taxes for that state based on the conduct of the business that occurs in whole or in part within this state.

(c) A business described by Subsection (b)(1) is entitled to declaratory relief on the issue of whether the requirement of another state that the business collect and remit sales or use taxes to that state constitutes an undue burden on interstate commerce under Section 8, Art I, United States Constitution.

(d) In determining whether to grant declaratory relief to a business under this section, a court shall consider:

(1) The factual circumstances of the business's operations that give rise to the demand by the other state, and

(2) The decisions of other courts interpreting Section 8, Art. I, United States Constitution.

CPRC 37.006

(a) When declaratory relief is sought, all persons who have or claim an interest that would be affected must be made parties. A declaration does not prejudice the rights of a person not a party to the proceeding.

(b) In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and entitled to be heard, and if the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard.

CPRC 37.007

If a proceeding under this chapter involves the determination of an issue of fact, the issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court where the proceeding is pending.

CPRC 37.008

The court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding.

CPRC 37.009

In any proceeding under this chapter, the court may award costs and reasonable and necessary attorneys' fees as are equitable and just.

CPRC 37.010

All orders, judgments and decrees under this chapter may be reviewed as other orders, judgments and decrees.

CPRC 37.011

Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application must be by petition to a court having jurisdiction to grant the relief. If the application is deemed sufficient, the court shall, on reasonable notice, require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why further relief should not be granted forthwith.

# TAB B

# Final Judgment

CAUSE NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § § | 81ST JUDICIAL DISTRICT |
| ROSALE SCOTT, | § § § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

## FINAL JUDGMENT

The Court, having considered the pleadings, the file, the evidence presented, and the argument of counsel, finds that the following final judgment should be entered.

On March 3, 2014, the Court issued an Order Granting Defendant's Motion for Partial Summary Judgment. That Order provided, and the Court hereby incorporates that Order, and orders, adjudges and decrees as follows:

The Court rules that the Deed of Partition dated August 17, 1979 between Plaintiffs IVARENE HOSEK and VICTOR HOSEK (the "Hoseks") and Defendant ROSALE SCOTT ("Scott") recorded at Vol. 510, Page 126, Real roperty Records of Atascosa County, Texas (the "Partition Deed") is unambiguous as a matter of law and has the effect as urged by Defendant.

IT IS THEREFORE ORDERED that judgment is **granted** in favor of Defendant ROSALE SCOTT and that: (1) the Partition Deed is unambiguous as a matter of law; (2) the Partition Deed partitioned the surface, but did not partition the minerals; (3) as to the minerals, the Hoseks and Scott agreed not only that they were not partitioned, but also that they would not partition them until the

FILED 9:37 o'clock A M
MARGARET E. LITTLETON, DISTRICT CLERK

Page | 1

CIVIL

VOL 89 PAGE 1466

JUN 2 0 2014

CLERK DISTRICT COURT, ATASCOSA CO. TX
BY DEPUTY

210

expiration of the stated time limits, and whether the minerals would ever be partitioned by the owners remained an open question and the Hoseks and Scott continued to own an undivided one-half of the minerals, each; and (4) that since there has been no subsequent partition of the minerals, Defendant ROSALE SCOTT therefore currently owns fifty percent (50%) of the minerals under the 169.27 acres of land, the surface of which was deeded to the Hoseks on pages 1-3 of the Partition Deed, whose legal description is attached as Exhibit "A" and incorporated by reference.

On June 18, 2014, the Court issued an Order Granting Defendant's Notice of Non-Suit Without Prejudice of Defendant's Remaining Counterclaims Against Plaintiffs, which non-suited Defendant's counterclaims for bonuses and royalties against Plaintiff.

On June 18, 2014, the Court issued an Order Granting Attorneys' Fees, which granted Defendant attorneys' fees as shown in that Order. Therefore, it is ordered, adjudged and decreed that Defendant ROSALE SCOTT have and recover judgment against Plaintiffs IVARENE HOSEK and VICTOR HOSEK in the following amounts:

1. $ _39,500_ in attorney's fees through entry of judgment and setting of a supersedeas bond.

2. A conditional award of additional reasonable and necessary attorney's fees of $_____ _2,500_ in the event a new trial is sought in the trial court and Rosale Scott prevails, plus if an appeal occurs and Rosale Scott prevails, in the following amounts: 1) $_12,500_ for an appeal to the Court of Appeals; 2) $_2,500_ if any part of the judgment is appealed to the Texas Supreme Court by Writ of Error; and 3)

$ 17,500 should the petition for review be granted by the Texas Supreme Court and Rosale Scott prevails.

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that judgment is entered as set forth above.

IT IS FURTHER, ORDERED that all court costs incurred by Rosale Scott in connection with this action are taxed against Plaintiffs, Ivarene Hosek and Victor Hosek;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Judgment shall draw post-judgment interest at the rate of five percent (5%) per annum from the date of this Judgment until it is paid, plus costs of court.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant shall immediately have all writs, orders and other assistance for collection of this judgment, for which let execution issue immediately.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all relief not specifically granted is denied.

This judgment finally disposes of all parties and claims, is appealable and is a final judgment.

SIGNED this __19__ day of __June__, 2014.

_____
FRED SHANNON, JUDGE PRESIDING

**APPROVED AS TO FORM ONLY:**

Michele Barber Chimene
State Bar No. 04207500
**THE CHIMENE LAW FIRM**
15203 Newfield Bridge Lane
Sugar Land, Texas 77498
Telephone: 713-474-5538
Email: michelec@airmail.net

Co-counsel:

ROBERT J. OGLE
State Bar No. 15231350
**ROBERT J. OGLE, ATTORNEY AT LAW**
508 E. San Antonio Street
Boerne, Texas 78006
Telephone: (830) 249-9358
Facsimile: (830) 249-8508
Email: Bob@ogleattorney.com

**ATTORNEY FOR PLAINTIFFS,
VICTOR HOSEK AND IVARENE HOSEK**

**BARTON, EAST & CALDWELL, L.L.P.**
One Riverwalk Place, Suite 1825
700 N. St. Mary's Street
San Antonio, Texas 78205
Telephone: (210) 225-1655
Facsimile: (210) 225-8999

By: _____
G. WADE CALDWELL
State Bar No. 03621020
Email: gcaldwell@beclaw.com
RAQUEL G. PEREZ
State Bar No. 00784746
Email: rperez@beclaw.com

**ATTORNEYS FOR DEFENDANT, ROSALE SCOTT**
M:\2000\2200 OIL AND GAS CLIENTS\121 Hosek v Scott\Pleadings\JUDGMENT.docx

Page | 4

213

## TAB C

## Findings of Fact

CAUSE NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK, | § § § | IN THE DISTRICT COURT |
| Plaintiffs, | § § | |
| v. | § § | 81ST JUDICIAL DISTRICT |
| ROSALE SCOTT, | § § § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On this day came on to be considered Defendant Rosale Scott's Proposed Findings of Fact and Conclusions of Law and the Hosek's Proposed Findings of Fact and Conclusions of Law.

The Court, after considering the Proposed Findings of Fact and Conclusions of Law of both parties, finds the Defendant's proposed Findings and Conclusions as to attorneys' fees are consistent with its previously declared rulings, and should be entered as the Court's Findings of Fact and Conclusions of Law. The Court declines to adopt the Plaintiffs' Proposed Findings of Fact and Conclusions of Law. The Court declines to make Findings of Fact and Conclusions of Law as to the merits of the Summary Judgment for the reasons set forth in Defendant's Objections to the Hoseks' Proposed Findings of Fact and Conclusions of Law.

With respect to the granting of attorneys' fees to Defendant, the Court now makes the following findings of fact and conclusions of law.

### I.
### FINDINGS OF FACT

1.   An award of attorneys' fees to Defendant Rosale Scott is reasonable and necessary.

Page | 1

**405**

2.      G. Wade Caldwell is the attorney for Defendant Rosale Scott and provided live testimony, an affidavit, and time records that were entered into evidence to support Defendant's Motion for Award of Attorneys' Fees.

3.      Mr. Caldwell was licensed to practice law in the state of Texas in 1984 and has practiced in San Antonio, Texas.

4.      Mr. Caldwell practices law primarily in civil litigation and oil and gas and is familiar with the fees customarily charged in Bexar and Atascosa counties on cases such as this one.

5.      Mr. Caldwell is familiar with the factors taken into account by the State Bar of Texas and courts in the state of Texas in determining reasonable and necessary attorney's fees.

6.      Mr. Caldwell is familiar with the fees charged for similar cases in Atascosa County, Texas.

7.      Since Mr. Caldwell has practiced law in the state of Texas since 1984, he is familiar with the range of billing rates for legal services rendered by attorneys possessing his experience, skill, knowledge, reputation, and background in the civil litigation field.

8.      Attorneys from Bexar County frequently practice law in Atascosa County because of the close proximity between Bexar and Atascosa Counties. Therefore, it is reasonable to charge attorney fee rates from Bexar County in Atascosa County.

9.      Mr. Caldwell has experience handling appeals in Texas State appellate courts.

10.     Practicing in the civil litigation field regarding mineral titles is a complex area of practice.

11.     Mr. Caldwell obtained a positive result for Defendant because Defendant prevailed on her Motion for Partial Summary Judgment.

406

12. Plaintiffs did not achieve a benefit by filing the instant litigation to the extent that the court found in favor of Defendant.

13. This case was defended by defense counsel on a contingency fee basis for forty percent (40%) of the gross amount recovered by Defendant. Defense counsel also advanced expenses incurred in this litigation.

14. Even though the law firm of Barton, East & Caldwell, P.L.L.C. defended the case on a contingency basis, the attorneys and legal staff that worked on the case tracked their time on an hourly basis.

15. Defendant Rosale Scott submitted copies of time records from the law firm of Barton, East and Caldwell, P.L.L.C. reflecting time spent by attorneys and legal staff from May, 2013 to March 2014. Privileged information was redacted from the time records. The time records were attached to Defendant's Motion for Award of Attorneys' Fees and were admitted into evidence.

16. The amount of $315.00 per hour ($240.00 for associates) is a fair, reasonable and customary hourly fee for an attorney practicing in Atascosa County with the knowledge, skill and experience of Mr. Caldwell for this type of lawsuit.

17. The fee charged in this case is well within the parameters of the customarily charged fee in Atascosa County, Texas for civil litigation matters.

18. The rates of legal assistants reflected in the time records submitted by Defendant are reasonable and necessary and their work was done under the supervision of an attorney.

19. The work reflected on the time records submitted by Defendant was reasonable and necessary.

407

20. The time records submitted by Defendant reflect that slightly less than 355 hours were spent on the claims which allow recovery of attorneys' fees between May 2013 and February 28, 2014. This is a reasonable amount of time in light of the fact that the parties engaged in written discovery, took depositions, filed and argued a Plea in Abatement, filed a Motion for Partial Summary Judgment, filed a Motion to Strike Expert Report and Exclude Expert, filed Motions to Compel, and were set for trial in January 2014.

21. Between the date last reflected in the time records submitted by Defendant, additional legal work was performed by Mr. Caldwell as well as other members of his legal staff, including preparing, filing and arguing the Motion for Attorneys' Fees, preparing a Final Judgment, subpoenaing records from EOG Resources, Inc., and setting the objections of EOG Resources, Inc. for hearing. In his affidavit, Mr. Caldwell estimates that this involves an additional 50 hours of work. This additional legal work was both reasonable and necessary.

22. Mr. Caldwell provided evidence both in the form of live testimony before the court as well as in an affidavit admitted into evidence as to how the fees of his law firm were segregated, as required by Texas law.

23. Defendant segregated and did not include, in the fees that Defendant is seeking, fees which are related only to the counterclaim or other non-recoverable case matters.

24. The total hours reflected on the time records submitted by Defendant total approximately 381.73. From this amount, Defendant segregated and deducted approximately 28.8 hours that reflected legal services performed for solely non-recoverable claims or other non-recoverable case matters.

25. Defendant segregated the attorneys' fees relating to the Motion for Partial Summary Judgment and requested 100% of those fees.

26. Non-segregable time entries are time entries where the legal services advance both recoverable and non-recoverable claims and the time entries were not clear if the work related solely to the claims which allow recovery of attorneys' fees.

27. Mr. Caldwell provided evidence that in his opinion, eighty percent (80%) of these non-segregable time entries are for work attributable to the claims which allow recovery of attorneys' fees and twenty (20%) is related to work attributable to non-recoverable claims. Therefore, subtracting the non-recoverable entries and reducing the non-segregable entries by twenty percent (20%), the reasonable and necessary attorneys' fees incurred through the last invoice on the time records submitted by Defendant are summarized and calculated as follows: (a) non-segregable fees are $57,945.83; (b) recoverable fees relating to the Motion for Partial Summary Judgment are $17,832.49; (c) non-recoverable fees relating to EOG are $6,502.50; and (d) non-recoverable fees relating to the counterclaim are $368.00. Accordingly, total attorneys' fees are $82,648.82.

28. Defendant then segregated and reduced the total attorneys' fees of $82,648.82 by the following amounts: (a) $11,589.17 which constituted a 20% reduction of the non-segregable fees; (b) $6,502.50 which constituted the non-recoverable fees relating to EOG; and (c) $368.00 which constituted non-recoverable fees relating to the counter-claim.

29. Accordingly, the total attorney fees sought by Defendant through February 28, 2014 total $64,189.15. These attorneys' fees are both reasonable and necessary.

30. Defendant then requested an additional $10,000 of attorneys' fees for additional work performed from the date last reflected on the time records through the collection of judgment.

31. Accordingly, Defendant sought total attorneys' fees in the amount of $74,189.15.

409

32. $74,189.15 is a reasonable and necessary attorney's fee for the legal services performed on behalf of Defendant for the claims which allow recovery of attorneys' fees, for the work reflected on the time records thru February 28, 2014 and performed thru the entry of a supersedeas bond.

33. If a motion for new trial is necessary, a reasonable and necessary, attorneys' fee would be $3,500.00.

34. In the event any part of the judgment is appealed to the appropriate Court of Appeals and Defendant prevails, a reasonable and necessary, attorneys' fee would be $30,000.00.

35. In the event any part of the judgment is appealed to the Texas Supreme Court by Writ or Error and Defendant prevails, a reasonable and necessary, attorneys' fee would be $15,000.00.

36. Should the petition for review be granted by the Texas Supreme Court and Defendant prevails, a reasonable and necessary, attorneys' fee would be $25,000.00.

## II.
## CONCLUSIONS OF LAW

37. Under the Declaratory Judgment Act, a court may award reasonable and necessary attorneys' fees as are equitable and just. *GuideOne Elite Ins. v. Fielder Rd. Baptist Ch.*, 197 S.W.3d 305, 311 (Tex. 2006); *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

38. The Texas Supreme Court has adopted eight factors to be used by the fact finder to determine the reasonableness of attorneys' fees. *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812 (Tex. 1997).

39. The *Arthur Anderson* factors are also considered in contingency fee cases. *Id.* at 818.

410

40. The eight *Arthur Anderson* factors are:

a. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly;

b. The likelihood that the acceptance of the particular employment will preclude other employment by the attorney;

c. The fee customarily charged in the locality for similar legal services;

d. The amount involved and the results obtained;

e. The time limitations imposed by the client or by the circumstances;

f. The nature and length of the professional relationship with the client;

g. The experience, reputation, and ability of the attorney performing the services; and

h. Whether the fee is fixed or contingent on results obtained – that is, the uncertainty of collection before the legal services have been rendered.

*Arthur Anderson*, 945 S.W.2d at 818-819.

41. A party is not required to present evidence on all eight *Arthur Anderson* factors. *Academy Corp. v. Interior Buildout & Turnkey Constr., Inc.*, 21 S.W.3d 732, 742 (Tex.App. – Houston [14th Dist] 2000, no pet.).

42. Defendant Rosale Scott submitted sufficient evidence of the relevant *Arthur Anderson* factors.

43. Itemized time records can establish the time and labor required in a case. *Morrell Masonry Sup. v. Lupe's Shenandoah Reserve, LLC*, 363 S.W.3d 901, 909 (Tex. App. – Beaumont 2012, no. pet.).

44. An award of attorneys' fees to Defendant Rosale Scott is equitable and just.

45. Although $74,000.00 is a reasonable and necessary attorneys' fee for the work performed by defense counsel in this case through the entry entry of a supersedeas bond, it is equitable and just to reduce such fee to $39,500.00.

411

46.     If a motion for new trial is necessary, a reasonable and necessary attorneys' fee would be $3,500.00, however, it would be equitable and just to reduce such fee to $2,500.00.

47.     In the event any part of the judgment is appealed to the appropriate Court of Appeals and Defendant prevails, a reasonable and necessary attorneys' fee would be $30,000.00, however, it would be equitable and just to reduce such fee to $12,500.00.

48.     In the event any part of the judgment is appealed to the Texas Supreme Court by Writ or Error and Defendant prevails, a reasonable and necessary attorneys' fee would be $15,000.00, however, it would be equitable and just to reduce such fee to $3,500.00.

49.     Should the petition for review be granted by the Texas Supreme Court and Defendant prevails, a reasonable and necessary attorneys' fee would be $25,000.00, however, it would be equitable and just to reduce such fee to $12,500.00.

SIGNED this ___ day of August, 2014.

HONORABLE FRED J. SHANNON
Presiding Judge

APPROVED AS TO FORM ONLY:

G. WADE CALDWELL
State Bar No. 03621020
**BARTON, EAST & CALDWELL, P.L.L.C.**
One Riverwalk Place, Suite 1825
700 N. St. Mary's Street
San Antonio, Texas 78205
Telephone: (210) 225-1655
Facsimile: (210) 225-8999

**ATTORNEYS FOR DEFENDANT**

M:\2000\2200 OIL AND GAS CLIENTS\121 Hosek v Scott\Pleadings\Order Adopting Defs FOF.docx

Page | 8

412

# TAB D

# Partition Deed

*as*
*e*

Victor Hosek, et al to Rosale Voigt Scott, et al

DEED OF PARTITION

THE STATE OF TEXAS ) KNOW ALL MEN BY THESS PRESENTS:
COUNTY OF ATASCOSA )

That we, Victor Hosek and wife, Ivarene Voigt Hosek, of the County of Wilson, State of Texas, and Rosale Voigt Scott of the County of Bexar, State of Texas, have and hold in common the lands hereinafter mentioned, and are desirous of making partition of the same, it is hereby covenanted, granted, and agreed by and between said parties, and each of them covenants, grants, concludes, and agrees for himself, themselves, his and their heirs and assigns, that a partition of said lands be made as follows, to-wit:

First. The said Victor Hosek and wife, Ivarene Voigt Hosek, shall from henceforth have, hold, possess and enjoy in severalty by themselves and to themselves and to them and their heirs and assigns for their part, share, interest and proportion of said lands and premises, all that certain part of land situated in Atascosa County, Texas, as follows:

207.77 acres of land, situated about 20 miles S 85 deg. E. from Jourdanton, Texas, and being made up of 11 acres out of the John Hefron Survey No. 214, Abstract No. 393; 27 acres out of the H. B. Theobold Survey No. 210, Abstract No. 849; 105.77 acres out of the Geo. W. Thomas Survey No. 209, Abstract No. 948; and 64 acres out of the John Smith Survey No. 213, Abstract No. 804; and being a part of Subdivisions Nos. I, II, and III of the Robert Krause 1103 acre tract, and said 207.77 acres, in one body, being described by metes and bounds as follows, to-wit:

BEGINNING at a corner fence post on the N. W. side of a 20 foot public road traversing the Robert Krause tract of land, the same being the east corner of Subdivision No. III, and the east corner of this tract;

THENCE S. 50 deg. 00' W. 793.0 feet with the North line of said 20 foot road to a stake set on same for the lower southwest corner of this tract and the lower southeast corner of a 322.6 acre tract;

THENCE N. 40 deg. 00' W. 1737.5 feet to a stake set for the inner southwest corner of this tract and the inner southeast corner of said 322.6 acre tract;

THENCE S. 50 deg. 00' W. 1560.0 feet to a stake set for the upper southwest corner of this tract and a corner of said 322.6 acre tract;



83

THENCE N. 40 deg. 00' W. 2915.0 feet to a stake set in the south fence line of an 8.6 acre tract for the Northwest corner of this tract and the Northeast corner of said 322.6 acre tract;

THENCE N. 69 deg. 37' E. 112.5 feet with fence line to the Southeast corner fence post of said 8.6 acre tract;

THENCE N. 0 deg. 33' W. 373.5 feet with fence line to the Northeast corner fence post of said 8.6 acre tract;

THENCE N. 59 deg. 32' E. 570.0 feet with fence line to corner fence post;

THENCE N. 39 deg. 07' W. 363.5 feet with fence line to corner fence post for corner, same being the West corner of Subdivision No. III;

THENCE N. 53 deg. 31' E. 1432.0 feet with fence line to corner fence post for the Northeast corner of this tract, same being the North corner of Subdivision No. III;

THENCE S. 40 deg. 00' E. 5083.0 feet with the common boundary fence line of Subdivisions Nos. III and IV to the place of beginning, containing within the above metes and bounds 207.77 acres of land, comprised as aforesaid of 11 acres out of the John Hefron Survey No. 214; 27 acres out of the H. B. Theobold Survey No. 210; 105.77 acres out of the Geo. W. Thomas Survey No. 209; and 64 acres out of the John Smith Survey No. 213. Surveyed on April 19, 1948, by John A. Peel, County Surveyor of Atascosa County, Texas.

And being the same land described in deed dated May 6, 1945, from L. W. Stieren to FRIDOLIN VOIGT and recorded in Vol. 189, Pages 379-382, of the Deed Records of Atascosa County, Texas.

LESS all that certain tract or parcel of land containing 38.5 acres of land, being a portion of a 207.77 acres tract described as First Tract, conveyed to Victor Hosek and wife, Ivarene Voigt Hosek, and Rosale Voigt Scott, by Warranty Deed dated October 9, 1978, of record in Volume 491, Pages 288-291, Deed Records of Atascosa County, Texas, comprised of 23.10 acres out of the H. B. Theobold Survey #210, Abstract #849, and 15.4 acres out of the Geo. W. Thomas Survey #209, Abstract #843, said 38.5 acres being more particularly described as follows:

BEGINNING at a 1/2 inch galvanized pipe set on the Northeast boundary line of said 207.77 acre tract for the North corner of this tract, from which Place of Beginning, the North corner of said 207.77 acre tract bears N. 40 deg. 00 min. W., 1701.00 feet;

THENCE S. 40 deg. E. 3354.20 feet to a 3/4 inch galvanized pipe found on the Northwest Right-of-Way line of an existing 50 feet county road for the East corner of this tract;

THENCE S. 50 deg. 28 min. W. 500.00 feet along the Northwest Right-of-way line of said existing 50 foot county road for a 1/2 inch galvanized pipe set for the South corner of this tract;

-2-

84

THENCE N. 40 deg. 00 min. W. 3354.20 feet to a 1/2 inch galvanized pine set for the West corner of this tract;

THENCE N. 50 deg. 28 min. E. 500.00 feet to the Place of Beginning, containing 38.5 acres of land, as surveyed on the ground by me, Victor Seguin, Registered Public Surveyor No. 1776, on this, the 13th. day of June, 1979.

This partition does not include any of the oil, gas and other minerals in, on or under the above described tract of land, and same are to remain undivided for a period of twenty-five (25) years from date hereof and as long thereafter as oil, gas or other minerals are produced in paying quantities from the above described land.

Second. The said Rosale Voigt Scott shall from henceforth have, hold, possess and enjoy in severalty by herself and to herself and to her and her heirs and assigns for her part, share, interest and proportion of said lands and premises, the following two tracts of land situated in Atascosa County, Texas, described as follows:

First Tract: Being 139.77 acres of land in the Geo W. Thomas, Juan Ortiz, and G. Hernandez Surveys, and being described by metes and bounds as follows:

BEGINNING at a stake set on the southwest line of an old 20 foot road and the northeast line of a tract of 249½ acres conveyed to H. E. Ridout by G. L. Koriff of which this tract is a part, said stake being set for the west corner of a 150-3/4 acre tract and the east corner of this tract and the lower north corner of a 119.04 acre tract;

THENCE N. 40 deg. W. 3203 feet with the southwest line of said 20 foot road and the northeast line of original 249½ acre tract to a stake set for the north corner of this tract and the north corner of said original 249½ acre tract;

THENCE S. 50 deg. 17' W. 2583 feet with the southeast line of a road and the northwest line of said 249½ acre tract;

THENCE S. 40 deg. E. 2900 feet with the southwest fence line of said 249½ acre Subdivision to a stake set on same for the south corner of this tract and the west corner of a 119.04 acre tract;

THENCE N. 50 deg. E. 1154.5 feet to a common corner of this tract and 119.04 acre tract;

THENCE N. 38 deg. 30' W. 1087.5 feet with fence line to a stake set on same for a common corner of this tract and 119.04 acre tract;

THENCE N. 50 deg. E. 384 feet to a post set for a common corner of this tract and 119.04 acre tract;

THENCE N. 40 deg. W. 304 feet to a post set for a common corner of this tract and 119.04 acre tract;

THENCE N. 50 deg. E. 984 feet to a stake set for a common corner of this tract and 119.04 acre tract;

THENCE S. 40 deg. E. 1707.5 feet, parallel to and 30 feet for the northeast line of said 249½ acre subdivision and southwest line of said 20 foot road to a stake set for a common corner of this tract and 119.04 acre tract;

-3-

THENCE N. 50 deg. E. 30 feet to the place of Beginning.

And being the same land conveyed to Fridolin A. Voigt et ux by V. H. Thane, et ux, by deed dated January 29, 1945, appearing of record in Volume 173, Pages 601-603 of the Deed Records of Atascosa County, Texas.

Second Tract. All that certain tract or parcel of land containing 38.5 acres of land, being a portion of a 207.77 acre tract described as First Tract, conveyed to Victor Hosek and wife, Ivarene Voigt Hosek, and Rosale Voigt Scott, by Warranty Deed dated October 9, 1978, of record in Volume 491, Pages 288-291, Deed Records of Atascosa County, Texas, comprised of 23.10 acres out of the H. B. Theobold Survey#210, Abstract #849, and 15.4 acres out of the Geo. W. Thomas Survey #209, Abstract #848, said 38.5 acres being more particularly described as follows:

BEGINNING at a 1/2 inch galvanzied pipe set on the Northeast boundary line of said 207.77 acre tract for the North corner of this tract, from which place of beginning, the North corner of said 207.77 acre tract bears N. 40 deg. 00 min. W. 1701 feet;

THENCE S. 40 deg. E. 3354.20 feet to a 3/4 inch galvanised pipe found on the Northwest right-of-way line of an existing 50 foot county road for the East corner of this tract;

THENCE S. 50 deg. 28 min. W. 500.00 feet along the Northwest right-of-way line of said existing 50 foot county road for a 1/2 inch galvanized pipe set for the South corner of this tract;

THENCE N. 40 deg. 00 min. W. 3354.20 feet to a 1/2 inch galvanized pipe set for the West corner of this tract;

THENCE N. 50 deg. 28 min. E., 500.00 feet to the place of beginning, containing 38.5 acres of land, as surveyed on the ground by me, Victor Seguin, Registered Public Surveyor No. 1776, on this, the 13th. day of June, 1979.

This partition does not include any of the oil, gas and other minerals in, on or under the above described tracts of land, and same are to remain undivided for a period of twenty-five (25) years from date hereof and as long thereafter as oil, gas or other minerals are produced in paying quantities from the above described lands.

Witness our hands this _17th_ day of August, 1979.

_Victor Hosek_                    _Ivarene Voigt Hosek_

_Rosale Voigt Scott_

86

THE STATE OF TEXAS

COUNTY OF WILSON

Before me, the undersigned authority, on this day personally appeared Victor Hosek, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, on this the _17th_ day of August, A. D. 1979.

JOE R. WISEMAN
Notary Public in and for
Wilson County, Texas

_Joe R. Wiseman_
Notary Public in and for Wilson County, Texas.

THE STATE OF TEXAS

COUNTY OF WILSON

Before me, the undersigned authority, on this day personally appeared Ivarene Voigt Hosek, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, on this the _17th_ day of August, A. D. 1979.

JOE R. WISEMAN
Notary Public in and for
Wilson County, Texas

_Joe R. Wiseman_
Notary Public in and for Wilson County, Texas.

THE STATE OF TEXAS

COUNTY OF WILSON

Before me, the undersigned authority, on this day personally appeared Russle Voigt Scott, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office, on this the _17th_ day of August, A. D. 1969.

JOE R. WISEMAN
Public in and for
Wilson, Texas

_Joe R. Wiseman_
Notary Public in and for  Wilson
County, Texas.
JOE R. WISEMAN
Notary Public in and for
Wilson County, Texas

130

2886

PARTITION DEED

VICTOR HOSEK And wife
IVARENE VOIGT HOSEK
AND ROSALE VOIGT SCOTT

Filed for Record
22 Day of Aug 19 79
at 2:10 o'clock P M

ELIDIA SEGURA
County Clerk, Atascosa County
By J. Bautista
Deputy

Return to:
Victor Hosek
Rt 4, Box 6-A
Floresville, Texas
78114

JOE R. WISEMAN
ATTORNEY AT LAW
FLORESVILLE, TEXAS

13.00

BOOK 510 PAGE 131

Filed for record August _____ 22, _____ A.D., 1979 at _____ 2:10 ___ O'Clock _____ P. M. and

duly recorded August _____ 23, _____ A.D., 1979 at _____ 8:30 ___ O'Clock _____ A. M. in

Atascosa County Deed Records, Volume _____ 510 _____ Pages 126-131 _____

ELIDIA SEGURA, CLERK COUNTY COURT, ATASCOSA COUNTY, TEXAS

By _____ (KIPPY ZIGMOND) DEPUTY

o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o o

131

88

## EXHIBIT A

207.77 acres of land, situated about 20 miles S 85 deg. E. from Jourdanton, Texas, and being made up of 11 acres out of the John Hefron Survey No. 214, Abstract No. 393; 27 acres out of the H. B. Theobold Survey No. 210, Abstract No. 849; 105.77 acres out of the Geo. W. Thomas Survey No. 209, Abstract No. 848; and 64 acres out of the John Smith Survey No. 213, Abstract No. 804; and being a part of Subdivisions Nos. I, II and III of the Robert Krause 1103 acre tract, and said 207.77 acres, in one body, being described by metes and bounds as follows, to-wit:

BEGINNING at a corner fence post on the N. W. side of a 20 foot public road traversing the Robert Krause tract of land, the same-being-the east corner of Subdivision No. III, and the east corner of this tract;

THENCE  S. 50 deg. 00' W. 793.0 feet with the North line of said 20 foot road to a stake set on same for the lower southwest corner of this tract and the lower southeast corner of a 322.6 acre tract;

THENCE  N. 40 deg. 00' W. 1737.5 feet to a stake set for the inner southwest corner of this tract and the inner southeast corner of said 322.6 acre tract;

THENCE  S. 50 deg. 00' W. 1560.0 feet to a stake set for the upper southwest corner of this tract and a corner of said 322.6 acre tract;

THENCE  N. 40 deg. 00' W. 2915.0 feet to a stake set in the south fence line of an 8.6 acre tract for the Northwest corner of this tract and the Northeast corner of said 322.6 acre tract;

THENCE  N. 69 deg. 37' E. 112.5 feet with fence line to the Southeast corner of fence post of said 8.6 acre tract;

THENCE  N. 0 deg. 33' W. 373.5 feet with fence line to the Northeast corner fence post of said 8.6 acre tract;

THENCE  N. 59 deg. 32' E. 570.0 feet with fence line to corner fence post;

THENCE N. 39 deg. 07' W. 363.5 feet with fence line to corner fence post for corner, same being the West corner of Subdivision No. III;

THENCE N. 53 deg. 31' E. 1432.0 feet with fence line to corner fence post for the Northeast corner of this tract, same being the North corner of Subdivision No. III;

THENCE  S. 40 deg. 00' E. 5083.0 feet with the common boundary fence line of Subdivisions Nos. III and IV to the place of beginning, containing within the above metes and bounds 207.77 acres of land, comprised as aforesaid of 11 acres out of the John Hefron Survey No. 214; 27 acres out of the H. B. Theobald Survey No. 210; 105.77 acres out of the Geo. W.

Thomas Survey No. 209; and, 64 acres out of the John Smith Survey No. 213. Surveyed on April 19, 1948, by John M. Peel, County Surveyor of Atascosa County, Texas.

And being the same land described in deed dated May 6, 1948, from L. W. Stieren to FRIDOLIN VOIGT and recorded in Vol. 189, Pages 379-382, of the Deed Records of Atascosa County, Texas.

LESS all that certain tract or parcel of land containing 38.5 acres of land, being a portion of the 207.77 acres tract described as First Tract, conveyed to Victor Hosek and wife, Ivarene Voigt Hosek, and Rosale Voigt Scott, by Warranty Deed dated October 9, 1978, of record in Volume 491, Pages 288-291, Deed Records of Atascosa County, Texas, comprised of 23.10 acres out of the H. B. Theobold Survey #210, Abstract #849, and 15.4 acres out of the Geo. W. Thomas Survey #209, Abstract #848, said 38.5 acres being more particularly described as follows:

BEGINNING at a 1/2 inch galvanized pipe set on the Northeast boundary line of said 207.77 acre tract for the North corner of this tract, from which Place of Beginning, the North corner of said 207.77 acre tract bears N. 40 deg. 00 min. W., 1701.00 feet;

THENCE S. 40 deg. E. 3354.20 feet to a 3/4 inch galvanized pipe found on the Northwest Right-of-Way line of an existing 50 feet county road for the East corner of this tract;

THENCE S. 50 deg. 28 min. W. 500.00 feet along the Northwest Right-of-Way line of said existing 50 foot county road for a 1/2 inch galvanized pipe set for the south corner of this tract;

THENCE N. 40 deg. 00 min. W. 3354.20 feet to a 1/2 inch galvanized pipe set for the West corner of this tract;

THENCE N. 50 deg. 28 min. E. 500.00 feet to the Place of Beginning, containing 38.5 acres of land, as surveyed on the ground by Victor Seguin, Registered Public Surveyor No. 1776, on the 13th day of June, 1979.

# TAB E

## Response to Motion for Partial Summary Judgment

NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | 81ST JUDICIAL DISTRICT |
| | § | |
| ROSALE SCOTT | § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

## PLAINTIFFS' RESPONSE TO
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Plaintiffs, Ivarene Hosek and Victor Hosek, Non-Movants herein, and request this Honorable Court to DENY Movant's Motion for Partial Summary Judgment.

I.

### INTRODUCTION

A.    When a movant files a motion for summary judgment based on summary judgment evidence, the court can grant the motion only when the movant's evidence proves, as a matter of law, all the elements of the movant's cause of action or defense, or disproves the facts of at least one element in the non-movant's cause or defense.

B.    When evaluating a motion for summary judgment, the court must:

1.    Assume all the non-movant's proof is true;

2.    Indulge every reasonable inference in favor of the non-movant; and

3.    Resolve all doubts about the existence of a genuine issue of material fact against the movant.

II.

A.    The Hoseks, the Non-Movants in this cause, filed a declaratory judgment action

1

**37**

against Movant Scott, seeking an interpretation of a Partition Deed. The Partition Deed is attached hereto as Exhibit "A". The Partition Deed reads as follows:

"This partition does not include any of the oil, gas and other minerals in, on, or under the above described tract of land, and same are to remain undivided for a period of twenty-five(25) years from date hereof and as long thereafter as oil, gas or other minerals are produced in paying quantities from the above described land."

The conflict over the interpretation of this Deed arises out of the failure of the document to state what will occur after the expiration of the 25 year period and cessation of production. The Deed does not expressly state what happens upon that occurrence, and thus the conflict was born.

The deed was drafted by an attorney who is deceased. The Hoseks are aware that the language was intended that the undivided mineral interests revert to the surface owners after the expiration of 25 years and cessation of production, which occurred in 2004. The Hoseks, together with Ms. Scott, instructed the attorney to prepare an instrument which gave effect to their intention.

Movant Scott sold her land *with the minerals* and received cash consideration for the sale. She now seeks one half of the minerals beneath the Hoseks' land, citing the defective deed as the source of her title. In the letter attached as Exhibit "5" to Scott's deposition, Scott tells her prospective buyer that he will receive the minerals under the land she will sell him after the expiration of the 25 year period.

Movant filed a counterclaim against Non-Movants seeking affirmative relief for damages and a declaration that she owns one-half of the minerals under the Hoseks' land. Movant is aware that the Hoseks have leased their minerals to an oil company and that royalties are being

2

38

withheld until this conflict is resolved. During the course of exploration and development of the minerals on the Hoseks' property, no oil company or title examiner opined that Movant Scott owned any interest.

The Hoseks' retained expert, title examiner Allen D. Cummings, opines that the most natural interpretation of the Partition Deed language is that the minerals reverted to the surface owner after the expiration of 25 years and cessation of production. The report of Mr. Cummings, as well as his CV, are attached to his affidavit, being Exhibit "C" hereto.

B. Movant alleges there is no genuine issue of material fact as to any element of interpretation of the Partition Deed. The very existence of this litigation disproves this claim. The wording is susceptible to multiple meanings by virtue of the Movant's claim that the language did not have its commonly accepted meaning.

C. Non-Movants claim a genuine issue of material fact exists as to Movant's counterclaim and submit affidavits, discovery, documentary evidence and Movants' pleadings, as summary judgment evidence, referenced in an appendix attached hereto, filed with this response and incorporated by such reference for all purposes as if recited verbatim herein.

III.

A. Non-Movants filed a claim against Movant seeking affirmative relief for the interpretation of a Partition Deed.

B. Movant alleges Movant is entitled to a partial summary judgment as a matter of law, and alleges that Movant can prove her counterclaim.

1. Non-Movants claim a genuine issue of material fact exists as to Movant's claim and submit affidavits, discovery, documentary evidence and Movants' pleadings, as summary judgment evidence, referenced in an appendix attached hereto, filed with this

3

response and incorporated by such reference for all purposes as if recited verbatim herein.

IV.

A.    The Court should deny Movant's Motion for Partial Summary Judgment and permit evidence to be presented and heard to establish the proper interpretation of the Partition Deed made the basis of this lawsuit. The very existence of this dispute proves that there are multiple interpretations of the document, and the evidence presented in this pleading establishes that the Non-Movants' interpretation is the proper meaning of the document.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Non-Movants pray that this Court will deny Defendant's Motion for Partial Summary Judgment, or order such other relief as may be appropriate.

Respectfully submitted,

By: _____
Robert J. Ogle
Texas Bar No. 1523135O
508 E. San Antonio St.
Boerne, TX 78006
Tel. (830) 249-9358
Fax. (830) 249-8508
Attorney for Plaintiffs
Ivarene Hosek and Victor Hosek

4

## CERTIFICATE OF SERVICE

I certify that on ___January 3___, 2014 a true and correct copy of Plaintiffs' Response to Motion for Summary Judgment was served by electronic mail on G. Wade Caldwell at gcaldwell@beclaw.com.

_____
Robert J. Ogle

5

NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | 81ST JUDICIAL DISTRICT |
| | § | |
| ROSALE SCOTT | § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

APPENDIX TO
PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

TABLE OF CONTENTS

All summary judgment evidence in this appendix is incorporated by reference into Plaintiffs' Response to Defendant's Motion for Partial Summary Judgment.

I.    Pleadings

                                                                    Exhibit A


II.   Affidavits

      Affidavit of Ivarene Hosek.
                                                                    Exhibit B
      Affidavit of Allen D. Cummings, expert witness
                                                                    Exhibit C


III.  Discovery




1.    Deposition Excerpts

      True and correct copies of excerpts from the transcript of the deposition of Rosale Scott with a true copy of the certificate of the deposition officer and the affidavit of Robert J. Ogle.

                                                                    Exhibit D

6

42

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK<br>Plaintiffs, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§<br>§ | 81st JUDICIAL DISTRICT |
| ROSALE SCOTT<br>Defendant. | §<br>§<br>§ | OF ATASCOSA COUNTY, TEXAS |

## ORIGINAL PETITION
## FOR DECLARATORY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Ivarene Hosek and Victor Hosek, Plaintiffs herein, filing this Petition for Declaratory Judgment, pursuant to the Texas Uniform Declaratory Judgments Act, Chapter 37 of the Texas Civil Practice and Remedies Code, and would show the Court the following:

### I. DISCOVERY CONTROL PLAN LEVEL

Plaintiffs intend that discovery be conducted under Discovery Level 2.

### II. PARTIES AND SERVICE

A.      Plaintiff, Ivarene Hosek brings this action individually. Plaintiff resides in Wilson County, Texas.

B.      The last three numbers of Ivarene Hosek's driver's license number are 673. The last three numbers of Ivarene Hosek's social security number are 641.

C.      Plaintiff, Victor Hosek brings this action individually. Plaintiff resides in Wilson County, Texas.

D.      The last three numbers of Victor Hosek's driver's license number are 194. The last three numbers of Victor Hosek's social security number are 212.

E.      Defendant Rosale Scott, an Individual who is a resident of Texas, may be served



EXHIBIT A

1    44

with process at her home at the following address: 1032 Hanover, New Braunfels, Texas 78132. Service of said Defendant as described above can be effected by personal delivery.

## III. JURISDICTION AND VENUE

A.    The subject matter in controversy is within the jurisdictional limits of this court.

B.    Plaintiffs seek:

1.    monetary relief of $100,000 or less and non-monetary relief.

C.    This court has jurisdiction over the parties because Defendant is a Texas resident.

D.    Venue in Atascosa County is proper in this cause under Section 15.011 of the Texas Civil Practice and Remedies Code because this action involves real property as provided by said Section, and this county is where all or part of the real property is located.

## IV. FACTS

On October 4, 1978, Fridolin Alex Voigt and wife, Pearl Schnautz Voigt, deeded the family farm to their children, Ivarene Hosek (and her husband Victor) and Rosale Scott, in undivided shares. Ivarene and Rosale then partitioned the property on August 17, 1979, but reserved minerals for twenty five years, so that each would have a one half mineral interest in the entire tract. The partition gave Ivarene a tract of 207.77 acres, less a 38.5 acre tract, and gave Rosale a 130.77 acre tract, plus the 38.5 acres reserved out of Ivarene's 207.77 acres. Ivarene then purchased back from Rosale the 38.5 acres on October 16, 1979, so that she possessed the original 207.77 acre tract. The 38.5 acre purchase also reserved minerals for 25 years. After 25 years, on August 17, 2004, the minerals reverted back to the owner of the respective tracts. Rosale sold approximately 60 acres of her acreage to Evaristo Morales and wife, Rene Morales on March 4, 1986. Then Rosale sold approximately 70 acres to William W. King and wife, Rosie King on January 29, 1990. Ivarene still owns her 207.77 acres together with her husband, Victor

Hosek.

Ivarene has attempted to lease her acreage for oil and gas production, and Rosale claims an interest in some of the minerals under Ivarene's land. Rosale's claims are unfounded in law and in fact and are costing Ivarene substantial potential oil and gas income by making a claim for payment of funds to which she is not entitled.

## V. RELIEF REQUESTED

There exists a genuine controversy between the parties herein that would be terminated by the granting of declaratory judgment. Plaintiffs therefore request that declaratory judgment be entered as follows:

A.     A judgment of the court that Ivarene Hosek and Victor Hosek own one hundred per cent of the minerals, including oil and gas, lying under their property, described in Exhibit A attached hereto and made a part hereof, and a judgment of the court that Rosale Scott owns no minerals lying under the said tract.

## VI. ATTORNEY'S FEES

Pursuant to Section 37.009 of the Texas Civil Practice and Remedies Code, request is made for all costs and reasonable and necessary attorney's fees incurred by Plaintiffs herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendant be cited to appear and answer herein, and that on final trial hereof declaratory judgment be granted as requested herein and Plaintiffs be awarded costs and reasonable and necessary attorney's fees, and for such other and further relief that may be awarded at law or in equity.

46

Respectfully submitted,

By: _____
Robert J. Ogle
Texas Bar No. 15231350
508 E. San Antonio St.
Boerne, TX 78006
Tel. (830) 249-9358
Fax. (830) 249-8508
Attorney for Plaintiffs
Ivarene Hosek and Victor Hosek

4

207.77 acres of land, situated about 20 miles S 85 deg. E. from Jourdanton, Texas, and being made up of 11 acres out of the John Hefron Survey No. 214, Abstract No. 393; 27 acres out of the H. B. Theobold Survey No. 210, Abstract No. 849; 105.77 acres out of the Geo. W. Thomas Survey No. 209, Abstract No. 845; and 64 acres out of the John Smith Survey No. 213, Abstract No. 804; and being a part of Subdivisions Nos. I, II, and III of the Robert Krause 1103 acre tract, and said 207.77 acres, in one body, being described by metes and bounds as follows, to-wit:

BEGINNING at a corner fence post on the N. W. side of a 20 foot public road traversing the Robert Krause tract of land, the same being the east corner of Subdivision No. III, and the east corner of this tract;

THENCE S. 50 deg. 00' W. 793.0 feet with the North line of said 20 foot road to a stake set on same for the lower southwest corner of this tract and the lower southeast corner of a 322.6 acre tract;

THENCE N. 40 deg. 00' W. 1737.5 feet to a stake set for the inner southwest corner of this tract and the inner southeast corner of said 322.6 acre tract;

THENCE S. 50 deg. 00' W. 1560.0 feet to a stake set for the upper southwest corner of this tract and a corner of said 322.6 acre tract;

THENCE N. 40 deg. 00' W. 2915.0 feet to a stake set in the south fence line of an 8.6 acre tract for the Northwest corner of this tract and the Northeast corner of said 322.6 acre tract;

THENCE N. 69 deg. 37' E. 112.5 feet with fence line to the Southeast corner fence post of said 8.6 acre tract;

THENCE N. 0 deg. 33' W. 373.5 feet with fence line to the Northeast corner fence post of said 8.6 acre tract;

THENCE N. 59 deg. 32' E. 570.0 feet with fence line to corner fence post;

THENCE N. 39 deg. 07' W. 363.5 feet with fence line to corner fence post for corner, same being the West corner of Subdivision No. III;

THENCE N. 53 deg. 31' E. 1432.0 feet with fence line to corner fence post for the Northeast corner of this tract, same being the North corner of Subdivision No. III;

THENCE S. 40 deg. 00' E. 5083.0 feet with the common boundary fence line of Subdivisions Nos. III and IV to the place of beginning, containing within the above metes and bounds 207.77 acres of land, comprised as aforesaid of 11 acres out of the John Hefron Survey No. 214; 27 acres out of the H. B. Theobold Survey No. 210; 105.77 acres out of the Geo. W. Thomas Survey No. 209; and 64 acres out of the John Smith Survey No. 213. Surveyed on April 19, 1948, by John A. Peel, County Surveyor of Atascosa County, Texas.

And being the same land described in deed dated May 6, 1945, from L. W. Stieren to FRIDOLIN VOIGT and recorded in Vol. 189, Pages 379-382, of the Deed Records of Atascosa County, Texas.

# EXHIBIT A

NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | 81ST JUDICIAL DISTRICT |
| | § | |
| ROSALE SCOTT | § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

## AFFIDAVIT

BEFORE ME, the undersigned authority, personally appeared Ivarene Hosek, who being duly sworn, deposed as follows:

"My name is Ivarene Hosek. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts alleged in Plaintiffs' Response to Defendant's Motion for Summary Judgment. I hereby swear that the following statements in support of Plaintiffs' Response to Defendant's Motion for Summary Judgment are true and correct.

"My sister and I made an agreement to partition the property we bought from our parents on October 4, 1978. We agreed to let the minerals remain undivided for a period of twenty five years and as long thereafter as oil and gas were being produced. After that time, the minerals would be vested in the surface owner. This is the document that our attorney, Joe R. Wiseman, was directed to draft, and it was signed by us on August 17, 1979. My sister and I shared the cost of the attorney fees to Joe Wiseman to prepare this document. My sister knew of our agreement regarding the minerals and told this to her buyers, who purchased her property after my sister told them they would own the minerals after the expiration of the twenty five year period, being August 17, 2004.

My sister only made this claim for one half of the minerals under my property after being



49

asked by the oil company to sign a title curative document to address the poorly drafted Partition Deed. The oil companies who researched the title read this document and presumed that my husband and I owned all the minerals under our property after the expiration of the twenty five year period. My sister is fully aware of this. My sister has sold her land with the minerals and been paid for them, now she wants half of my minerals. Her actions have prevented me and all mineral owners of the pooled well unit from being paid any royalties. The oil company, EOG, has made it known to me that it may need to either abandon the well unit that has been drilled or exclude our acreage from the pooled unit if this issue is not resolved. I and many other mineral owners may be adversely affected by my sister's claims."



Ivarene Hosek

**SUBSCRIBED AND SWORN TO BEFORE ME** on Jan 2, 2014 , by
Ivarene Hosek .

PATRICIA L. OGLE
MY COMMISSION EXPIRES
December 19, 2014

Notary Public, State of Texas

50

NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK<br>Plaintiffs, | §<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| V. | §<br>§ | 81ST JUDICIAL DISTRICT |
| ROSALE SCOTT<br>Defendant. | §<br>§<br>§ | ATASCOSA COUNTY, TEXAS |

### AFFIDAVIT IN SUPPORT OF
### PLAINTIFFS' RESPONSE TO
### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE ME, the undersigned authority, personally appeared Allen Cummings, who being duly sworn, deposed as follows:

"My name is Allen D. Cummings. I am at least 18 years of age and of sound mind. I have personal knowledge of the facts alleged herein, which are true and correct.

"My qualifications as a board certified oil and gas attorney and title examiner are attached hereto. I frequently perform title opinions for drilling and exploration for oil companies, including EOG, who, I have been advised, has a lease on the Hoseks' minerals. I have reviewed the Partition Deed which is in dispute, and I prepared my professional opinion as a title examiner in the form of the report which is attached hereto. This is my opinion based upon my knowledge and experience, and this is a true and correct copy of my report."

SIGNED ON December 30, 2013.

_Allen D. Cummings, Affiant_

**SUBSCRIBED AND SWORN TO BEFORE ME** on December 30, 2013, by Allen D. Cummings.

_Notary Public, State of Texas_

ROSA YBARRA
Notary Public, State of Texas
My Commission Expires
January 16, 2017

EXHIBIT C

51

# Allen D. Cummings

**Attorney at Law**

*Board Certified – Oil, Gas and Mineral Law*
*Texas Board of Legal Specialization*

Principal Office, San Antonio: 1777 NE Loop 410, Suite 600, San Antonio, Texas 78217
Houston Office: 4801 Woodway Drive, Suite 300 East, Houston, Texas 77056
Phone/Fax: 1-888-832-1115  Email: scummings@scummings-law.com  www.scummings-law.com

Please Send Reply to:

November 29, 2013

Robert J. Ogle, Esq.
The Law Offices of Robert J. Ogle, P.C.
508 E. San Antonio St.
Boerne, TX 78006

Re:  Deed of Partition dated 8/17/1979, recorded 510 DR 126, Atascosa County, Texas, by and between Victor Hosek, and wife, Ivarene Voigt Hosek and Rosale Voigt Scott.

Dear Mr. Ogle:

You have asked me to provide you my opinion, based solely on my review of the above-referenced Deed of Partition, concerning the ownership of the oil, gas and other minerals in and under the lands described in said Deed of Partition. The lands in Deed of Partition are described as a 207.77-acre tract of land, described by metes and bounds, in the "First" section of the Deed of Partition and tracts of 130.77 acres and 38.5 acres, each described by metes and bounds, in the "Second" section of the Deed of Partition. The Deed of Partition recites that the parties hold the lands described in common. Following the description of the lands in each section of the Deed of Partition is the following clause:

> This partition does not include any of the oil, gas and other minerals in, on or under the above described tract of land, and same are to remain undivided for a period of twenty-five years from the date hereof and as long thereafter as oil, gas or other minerals are produced in paying quantities from the above described land.

This clause does not say what is the effect of the Partition Deed at the end of 25 years, i.e. on 8/17/2004, if there was not then, and thereafter, production in paying quantities from the lands described. Therefore, in order to determine the present ownership of the oil, gas and other minerals in the lands described in the Deed of Partition, assuming there has not been continuous production in paying quantities, we must determine the effect of this clause.

Whether this clause renders the Deed of Partition ambiguous is a question of law to be determined by a court. However, the cases on construction of deeds and contracts show that the courts will first apply the rules of construction to determine from the four corners of the instrument the intent of the parties as expressed in the instrument, regardless of what may have been the subjective intent of the parties to the instrument. *Luckel v. White*, 819 S.W.2d 459 (Tex. 1991). If, after the application of the rules of construction, there are two or more reasonable interpretations, then a court may find the instrument is ambiguous. *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154 (Tex. 1951).

52

It is well settled that a partition deed does not convey title, but rather dissolves the tenancy of lands owned in common and segregates the possession and use of the lands among individual co-owners. *Houston Oil. Co. of Texas v. Kirkindall*, 145 S.W.2d 1074 (Tex. 1941). In addition, there is a presumption that when lands are partitioned among co-owners, the whole of the land is partitioned, unless some portion of the land is expressly excepted from the partition. *Pewitt v. Renwar Oil Corp.*, 261 S.W.2d 904, 906 (Tex. Civ. App. – Houston, 1962, writ refused n.r.e.)

Reading the above clause in light of these two principles, it would appear that the parties to the Deed of Partition, expressly excluded from the partition the oil, gas and other minerals in the lands for a term defined as "twenty-five years . . . and as long thereafter as oil, gas or other minerals are produced in paying quantities from the above described land." It would also appear the most reasonable construction of this clause, even though it is not expressly stated, is the parties intended, after the expressly excluded term, that the use and possession of the oil, gas and other minerals would be segregated to the owners of the individual tracts described in the first and second sections of the Deed of Partition. In other words, the exclusion from the intended partition of possession and use of all the lands as to oil, gas and other minerals ends after 25 years or, if there is production in paying quantities from the lands, then when there is no longer production in paying quantities. It is important to note again, the partition deed does not affect title to the lands, but only the segregation of possession and use.

You have asked me to provide you my opinion about whether such a construction of the Deed of Partition violates the Rule Against Perpetuities (the "Rule"). The Rule is applicable to a future estate, which may not vest during lives in being plus twenty-one years; it has no application to present interests or to provisions which may postpose possession beyond a period of lives in being and twenty-one years. *See generally, Kelly v. Womack*, 268 S.W. 2d 903, 905 (Tex. 1954) and *Hamman v. Bright & Co.*, 924 S.W.2d 168, (Tex. App. - Amarillo 1996). In as much as the Deed of Partition does not affect title, but only the segregation of the use and possession of the oil, gas and other minerals by the co-owners who joined in the partition, it would appear that the above construction would not be subject to the Rule. Because the parties own title to the lands subject to the Deed of Partition in common, only the segregation of use and possession of the oil, gas and other minerals is postponed for the stated term. Without this clause, the oil, gas and other minerals would have been partitioned upon execution and delivery of the Deed of Partition.

Based on the foregoing, it is my opinion that use and possession of the oil, gas and other minerals in the lands described in the Deed of Partition is vested in the party to whom the individual tracts are partitioned therein, absent continuous production in paying quantities from and after 8/17/2004. This opinion is based on solely on examination of the Deed of Partition as a single document and without the benefit of other instruments in the chain of title that could affect my opinion on the effect of the Deed of Partition.

Yours truly,

Allen D. Cummings

ALLEN D. CUMMINGS
ATTORNEY AT LAW
4801 Woodway Drive, Suite 300 East, Houston, Texas 77056
1777 NE Loop 410, Ste. 600, San Antonio, Texas 78217
Telephone and Fax 888-832-1115
acummings@acummings-law.com

EDUCATION:

J. D. Southern Methodist University, Dallas, Texas – 1974
M.B.A. University of Phoenix - 2005
B.A. State University of New York at Buffalo, Buffalo, New York - 1964

PROFESSIONAL ACTIVITIES:

Admitted: Texas - 1975
Board Certified Oil, Gas and Mineral Law, Texas Board of Legal Specialization – 1987

Haynes and Boone, LLP - February 1999 to February 2006
Cotton, Bledsoe, Tighe & Dawson, P.C. - 1980 to January 1999
Attorney, Texas Oil & Gas Corp. - 1978-1980
Attorney, Otis Engineering Corporation, a subsidiary of Halliburton Company - 1975-1978

Member, State Bar of Texas Pattern Jury Charges Oil and Gas Committee, August 2013
Member, Texas Board of Legal Specialization Oil, Gas and Mineral Law Exam Commission, February
    2013
Chair, The American Association of Professional Landmen, Annual Meeting Workshop, June 2007
Co-Chair, Rocky Mountain Mineral Law Foundation Special Institute, Development Issues and Conflicts
    in Modern Oil and Gas Plays, November 2004
Oil, Gas and Energy Resources Law Section, State Bar of Texas: Chairman (2001-2002)
    Officer (1997-2001), Council Member (1994-1997) Editor, Section Report (1996-1997)
Course Director, Advanced Oil, Gas and Energy Resources Law Course 2001, State Bar of Texas
Course Director, 22nd Annual Oil, Gas & Mineral Law Institute, University of Texas School of Law and
    Oil, Gas and Mineral Law Section, State Bar of Texas
Oil, Gas and Mineral Law Section, Houston Bar Association, Editorial Board Section Newsletter (1991-
    1993), Officer (1993-1996), Chairman (1996-1997)

HONORS: Order of the Coif

LAW RELATED PUBLICATIONS:

Co-author for the Oil, Gas and Mineral Law for Legal Assistants and Attorneys, State Bar of Texas PDP,
1984
    Workshop Regarding Title Examination and Division Orders
Author/speaker for University of Texas 12th Annual Advanced Oil, Gas & Mineral Law Institute (1986),
    Conveying and Reserving Mineral Interests
Co-author/speaker for the State Bar of Texas PDP 1986 Advanced Estate Planning and Probate Course,
    Perfecting Title and Transferring Real Property Out of the Estate

54

Author/speaker for the State Bar of Texas PDP 1987 Advanced Oil, Gas & Mineral Law Course,
    Land Litigation Applied to Oil and Gas Disputes
Author/speaker for South Texas College of Law 1989 Advanced Oil & Gas Law Institute,
    Current Oil and Gas Title Issues
Author/speaker for University of Texas 17th Annual Oil, Gas & Mineral Law Institute (1991),
    Selected Title Problems in Title Examination
Co-author/speaker for South Texas College of Law 1991 Advanced Oil & Gas Law Institute,
    A Comparison of Field Wide Unitization in Texas, Oklahoma and New Mexico
Author/speaker for South Texas College of Law 1992 Advanced Oil & Gas Law Institute,
    Division Orders and Payment for Production Proceeds
Author/speaker for State Bar of Texas PDP 1992 Advanced Oil, Gas & Mineral Law Course,
    Selected Title Issues: Partition and Probate
Author/speaker for State Bar of Texas PDP 1993 Advanced Oil, Gas & Mineral Law Course,
    Planning to be a Reasonable and Prudent Operator
Author/speaker for 1994 Houston Association of Professional Landmen Spring Technical Workshop,
    Recent Developments in Oil and Gas Law
Author/speaker for South Texas College of Law 1994 7th Annual Advanced Oil & Gas Law Institute,
    Case Law and Legislative Update
Author/speaker for Permian Basin Landmen's Association 1994 Fall Seminar,
    Case Law and Legislative Update
Author/speaker for Dallas Association of Petroleum Landmen's/Dallas Bar Association Energy Law
Section 1995 Educational Seminar,
    Recent Developments in Oil & Gas Law
Co-author, State Bar Section Report Oil, Gas & Mineral Law, Mar. 1995, Vol. 19, No. 3,
    Litigating Gas Royalty Cases
Author/speaker for Dallas Bar Association Energy Law Section Review of Oil and Gas Law X, Aug.
1995,
    Pooling A Non-executive Interest: Problems and Options for the Owner and the Lessee
Author/speaker for State Bar of Texas 1995 Advanced Oil, Gas & Mineral Law Course,
    Pooling Issues--Avoiding Pitfalls
Speaker/modified, updated and republished with permission by Tevis Herd for 1996 University of
Houston Law Center Advanced Oil & Gas Short Course,
    Assuring the Title: Concurrent Ownership, Pooling, Probate, Etc.
Speaker for The Southwestern Legal Foundation 47th Annual Institute on Oil and Gas Law and Taxation,
February 1996,
    Gas Royalty Issues for the Third Millennium
Speaker for 1996 Houston Association of Professional Landmen Technical Workshop,
    COPAS--Joint Accounting: Have They Built a Better Mousetrap?
Author/speaker for Denver Landmen Association, March 1996,
    Pooling Issues--Avoiding Pitfalls
Speaker for The Southwestern Legal Foundation 37th Annual Institute for Professional Landmen Seminar
April 1996
    Horizontal Drilling--Title and Related Legal Issues
Author/speaker for Permian Basin Landman's Association May 1996 Seminar,
    Pooling Issues--Avoiding Pitfalls
Author/speaker for Dallas Bar Association Energy Law Section Review of Oil and Gas Law XII Seminar,
August 1997,
    Horizontal Drilling--Title and Other Issues
Author/speaker for State Bar of Texas 1997 Advanced Oil, Gas & Mineral Law Course,

55

Pooling and Community Leases:  Problems and Options for The Executive Owner, the Non-executive Owner and the Lessee
Author/speaker for AAPL Corpus Christi Landman's Institute, October 1997,
Horizontal Drilling--Title and Other Issues
Author/speaker for Permian Basin Landmen's Association, November 1997,
Horizontal Drilling--Title and Other Issues
Author/speaker for San Antonio Association of Professional Landmen Ninth Annual Mid-Winter Seminar, March 1998,
Pooling and Community Leases:  Problems and Options for The Executive Owner, the Non-Executive Owner and the Lessee
Author/speaker for Petroleum Accountants Society of Houston, Ninth Annual Education Day, June 1998,
The AFE: Authority for Everything?
Author/speaker for 1998 Mineral Owners Conference, September 1998,
Conflicting Rights of Pipeline Companies and Surface Owners in Condemnation and Use of Pipeline Easements
Author/speaker for Houston Bar Association, Oil, Gas and Mineral Law Section Luncheon Program, September 1998,
Current Developments in Oil, Gas and Mineral Law
Author/speaker for State Bar of Texas 1998 Advanced Oil, Gas & Mineral Law Course,
Ethics: Problems Arising from Prior Representation
Co-Author/speaker for The Southwestern Legal Foundation 50th Annual Institute on Oil and Gas Law and Taxation, February 1999,
The Use of Tort and Statutory Duties to Enlarge Contract Obligations Under the Lease and the Operating Agreement - Oklahoma Law and Texas Law
Author/speaker for Texas Bankers Association Asset Management Seminar, March 1999,
Current Developments in Oil, Gas and Mineral Law
Author/speaker for American Association of Professional Landmen Convention, June 1999,
Protecting the Non-executive Owner
Co-author/speaker for The University of Texas School of Law 26th Annual Ernest E. Smith Oil, Gas and Mineral Law Institute, March 2000,
Trade Secrets and Proprietary Information
Author/Speaker for National Association of Lease and Title Analysts 15th Annual Conference, October 2000,
Horizontal Drainholes - Pooled and Not
Author/speaker for San Antonio Association of Professional Landmen 12th Annual Mid-Winter Seminar, February 2001,
Pooling Issues - Avoiding Pitfalls and Recent Developments in Pooling
Author/speaker for The University of Texas School of Law 27th Annual Ernest E. Smith Oil, Gas and Mineral Law Institute, March 2001,
Recent Developments and Specific Pooling Issues
Author/speaker for State Bar of Texas 2001 Advanced Oil, Gas & Energy Resources Law Course,
The Clairvoyance of A.W. Walker, Jr.
Author/speaker for The University of Houston Bar Foundation 2002 Advanced Oil & Gas Short Course,
Joint Operating Agreements - Current Issues
Author/speaker for the 48th Annual Rocky Mountain Mineral Law Institute, July 2002,
A Meeting of the Minds on Title Defects
Author/speaker for State Bar of Texas 2002 Advanced Oil, Gas & Energy Resources Law Course,
Dangers Associated With Use Of And Reliance Upon Prior Title Opinions
Speaker for National Association of Lease and Title Analysts 15th Annual Conference, October 2002,
Rights, Obligations and Problems Of Depth Severed Mineral And Leasehold Ownership

**56**

Author/speaker for the 49th Annual Rocky Mountain Mineral Law Institute, July 2003,
        Rights, Obligations and Problems Of Depth Severed Mineral And Leasehold Ownership
Author/speaker for The University of Houston Bar Foundation 2004 Advanced Oil & Gas Short Course,
        Joint Operating Agreements - Current Issues
Author/speaker for the 55th Annual Program on Oil and Gas Law, The Institute for Energy Law of The
Center for American and International Law, February 2004,
        The Fundamentals: State of the Art of Negotiating Environmental Issues in Energy Industry
        Purchase and Sale Agreements, Part 2: Flexible Approaches to Negotiating
Author/speaker for The University of Texas School of Law 30th Annual Ernest E. Smith Oil, Gas and
Mineral Law Institute, March 2004,
        Today's Marketing, Yesterday's Leases, Check Stub Statutes: The Perfect Storm
Author/speaker for Rocky Mountain Mineral Law Foundation Special Institute, Oil & Gas Agreements:
The Exploration Phase, June 2004,
        Complex Exploration Agreements; Getting Down to Business
Author/speaker for State Bar of Texas 2004 Advanced Oil, Gas & Energy Resources Law Course,
        Standard for Proof of Damages under the Joint Operating Agreement and Lagniappe
Author/speaker The University of Texas School of Law 32nd Annual Ernest E. Smith Oil, Gas and
Mineral Law Institute, March 2006
        Old AMIs – New Problems
Co-author/speaker for Rocky Mountain Mineral Law Foundation Special Institute, Oil & Gas
Agreements: Sales and Financing, May 2006,
        Organizing and Executing Due Diligence – Quickly
Speaker, The Houston Association of Professional Landmen, Spring Workshop, May 2006,
        The Accommodation Doctrine
Speaker, The Houston Association of Professional Landmen, Technical Conference, June 2006
        Ethical Issues: Preferential Rights to Purchase and Package Sales
Author/speaker for the 52nd Annual Rocky Mountain Mineral Law Institute, July 2006,
        Old Area of Mutual of Interest and Dedication Agreements – New Problems
Speaker, The Houston Association of Professional Landmen, Technical Conference, April 2007
        Ethical Issues: Negotiating and Applying AMI Clauses
Speaker, The American Association of Professional Landmen, Annual Meeting Workshop, June 2007
        Negotiating, Drafting and Applying AMI Clauses
        Checklist for Assignments
Speaker, San Antonio Bar Association Natural Resources Section Monthly Luncheon, June 2007
        Negotiating, Drafting and Applying AMI Clauses
Author/speaker for State Bar of Texas 26th Annual Advanced Oil, Gas & Energy Resources Law Course,
        September 2008
        Measuring the Quality of Title
Speaker, San Antonio Bar Association Natural Resources Section Monthly Luncheon, January 2009
        Oil and Gas Operations in Urban Areas
Author/speaker The University of Texas School of Law 35th Annual Ernest E. Smith Oil, Gas and
Mineral Law Institute, Oil and Gas Fundamentals Boot Camp March 2009
        The Joint Operating Agreement – The Basics
Speaker, The Houston Association of Professional Landmen, Technical Conference, April 2009
        Pooling and Unitization: Barnett and Haynesville Shales
Author/speaker for Rocky Mountain Mineral Law Foundation Special Institute, Oil & Gas Agreements:
The Exploration Phase, May 2009 and March 2010,
        Area of Mutual Interest Agreements

Author/speaker for State Bar of Texas 28th Annual Advanced Oil, Gas & Energy Resources Law Course, October 2010
    Thinking About Boilerplate

Author/speaker The University of Texas School of Law 37th Annual Ernest E. Smith Oil, Gas and Mineral Law Institute, Oil and Gas Fundamentals Boot Camp April 2011
    Texas Title Examination Standards: Introduction and Practical Exercises

Author/speaker for State Bar of Texas 29th Annual Advanced Oil, Gas & Energy Resources Law Course, October 2011
    The Pitfalls of Using the Wrong *Any* Form

Author/speaker for Rocky Mountain Mineral Law Foundation Special Institute: Mineral Title Examination, February 2012,
    Basis of Opinions, Types of Opinions, and Layout of Opinions

Author/speaker The University of Texas School of Law 38th Annual Ernest E. Smith Oil, Gas and Mineral Law Institute, March 2012
    Consent Asked For – But Not Received; the Enforceability of Consent to Assignment or Transfer Provisions

Speaker for American Association of Professional Landmen Annual Meeting, June 2012
    Pooling in Resource Plays

Author/speaker for State Bar of Texas 30th Annual Advanced Oil, Gas & Energy Resources Law Course, Oil, Gas and Energy Resources 101 October 2012,
    Anatomy of a Joint Operating Agreement

Author/speaker The University of Texas School of Law 39th Annual Ernest E. Smith Oil, Gas and Mineral Law Institute, Fundamentals of Oil, Gas and Mineral Law March 2013
    Texas Title Examination Standards: Introduction and Practical Exercises

Author/speaker The Center for American and International Law, Texas Mineral Title Course May 2013
    Texas Title Examination Standards: Introduction and Practical Exercises

Author/speaker for State Bar of Texas 31st Annual Advanced Oil, Gas & Energy Resources Law Course, 1 October 2013
    NPRIs: From Operator's Perspective in a Horizontal World

Author/speaker for Civil Justice Conference, October 2013
    Area of Mutual Interest and Preferential Right to Purchase Agreements

MEMBERSHIPS:

State Bar of Texas
San Antonio Bar Association
Houston Producer's Forum
American Association of Professional Landmen
Houston Association of Professional Landmen

Prior Expert Testimony

1.    For Defendant, Cause No. A-172, 979; *M & M Resources, Inc. v. DSTJ, L.L.P. and DSTJ Corporation*; 58th District Court, Jefferson County, Texas. Deposition April 2006.

2.    For Respondent, Case No. 77 198 00189 06 MAVI, *Enerplus Resources (USA) Corporation v. Slawson Exploration Company, Inc.*, American Arbitration Association, Denver, Colorado. Testify March 2007.

3.    For Respondent, *Hunt Petroleum Corporation, et al., v. LLOG Exploration Company, LLC, et al.*,

Arbitration Proceeding, Houston, Texas. Testify March 2007.

4.      For Intervenors in Cause No. C-1535-02-H; *Stephens Production Company, a Division of Stephens Production Group, Inc., as Plaintiffs v. Charlie Hudson, et al., as Intervenors, v. Paul Freeman, et al., as Defendants*; 389th Judicial District Court, Hidalgo County, Texas. Testify September 2008.

5.      For Plaintiff, Cause No. 0-06-161; *Gastar Exploration Texas LP v. John E. Mcfarlane, et al.*, 87th Judicial District Court, Leon County, Texas. Deposition November 2008.

6.      For Movants for Establishing a Producers Committee, In Re: *SEMCRUDE, L.P., et al. Chapter 11 Case No. 08-11525(BLS)*, Adversary No. 08-51444(BLS) (TEXAS), United States Bankruptcy Court for the District of Delaware. Testify February 2009.

7.      For Plaintiff, Cause No. 2008-05053, *Carrizo Oil & Gas, Inc. v. 2001 Trinity Fund, LLC*, 295th Judicial District Court, Harris County, Texas. Testify October 2009.

8.      For Plaintiff, Civil Action No. H-08-3341, *Preston Exploration Company, L.P., et al. v. GSF, L.L.C., et al.*; United States District Court for the Southern District of Texas, Houston Division. Testify March 2010.

9.      For Plaintiff, Cause No. 2009-66618, *Davis Petroleum Corporation v. ERG Resources, LLC*, 269th Judicial District Court, Harris County, Texas. Deposition February 2011.

10.     For Defendants, Civil Action No. 2:08-CV-345 TJW, *Charles H. Coll, et al., v. Abaco Operating, LLC, et al.*, United States District Court for the Eastern District of Texas, Marshall Division. Deposition February 2011.

11.     For Claimant, *Tauren Exploration, Inc., et al. v. EXCO Operating Company, LP, et al.*, Arbitration Pursuant to November 2009 Purchase & Sale Agreement (Not Administered). Testify January 2012.

12.     For Plaintiff, Cause No. 08-04-07047-CV, *OZ Gas Corporation v. Remuda Operating Company, et al.*, 112th Judicial District Court, Crockett County, Texas. Testify February 2012.

13.     For Plaintiff, Cause No. 2010-15225, *Devon Energy Production Company, L.P. v. KCS Resources, LLC*, 129th Judicial District, Harris County, Texas. Deposition March 2012.

14.     For Plaintiff, Cause No. CV11-04-320; *Merit Management Partners I, LP, et al. v. Lakota Energy Limited Partnership*; 271st Judicial District, Wise County, Texas. Deposition May 2012, testify October 2102.

15.     For Claimant, Arbitration Proceeding (Not Administered) concerning Cause No. P-12,779-C, *Kathleen Wild v. Frank J. Schuster, et al.,* County Court No. 3, Sitting in Probate, Hidalgo County, Texas. Testify August 2012.

16.     For Plaintiff, Cause No. 11-0849, *Noel Diane Jones, et al. v. Petrohawk Properties, L.P., et al.*, 71st Judicial District, Harrison County, Texas. Deposition September 2012 and March 2013; testify September 2013.

17.     For Defendant, Cause No. 26527, *John G. Middleton, et al. v. Fairways Exploration &*

*Production, LLC*, 344th District Court, Chambers County, Texas.  Deposition March 2013.

18.     For Defendant, Cause No. DC-12-05303; *Orca Assets, G.P. LLC v. JP Morgan Chase Bank, N.A., et al,* B-44[th] District Court, Dallas County, Texas.  Deposition October 2013.

**60**

NO. 13-06-0559-CVA

| | | |
|---|---|---|
| IVARENE HOSEK AND VICTOR HOSEK | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| | § | |
| V. | § | 81ST JUDICIAL DISTRICT |
| | § | |
| ROSALE SCOTT | § | |
| Defendant. | § | ATASCOSA COUNTY, TEXAS |

## AFFIDAVIT OF Robert J. Ogle

**BEFORE ME**, the undersigned authority, on this day personally appeared Robert J. Ogle, the undersigned affiant, who swore on oath that the following facts are true:

"My name is Robert J. Ogle. I am over 18 years of age, of sound mind and fully competent to make this affidavit. I have personal knowledge of the facts herein stated and they are all true and correct.

"I was present at the deposition of Rosale Scott taken on November 1, 2013. The attached deposition transcript excerpts accurately reflect the deposition testimony given by Rosale Scott and is an exact true and correct copies of excerpts of the deposition transcript."

SIGNED ON _January 2_, 2014.

_Robert J. Ogle_
Robert J. Ogle, Affiant

SUBSCRIBED AND SWORN TO BEFORE ME on ___Jan 2 2014___, by
_Robert J. Ogle_.


PATRICIA L. OGLE
MY COMMISSION EXPIRES
December 19, 2014

Notary Public, State of Texas



12

61

Q. So was this a point of negotiation between you and Mr. King about reservation of the minerals?

A. Well, I didn't talk to Mr. King very much really. I mean we talked a couple of times. We didn't even talk about oil rights really, oil or mineral rights.

Q. You just testified that you wanted 30 but you could only get 20.

A. Yes.

Q. So you obviously negotiated with Mr. King for the mineral rights.

A. Well, he did.

Q. Well, he negotiated successfully.

A. Yeah.

Q. But you negotiated with him over the mineral rights?

A. Yes.

(Exhibit 5 marked)

Q. (By Mr. Ogle) I am going to hand you what has been marked our Exhibit Number 5 and see if you can tell me what that is. Do you know what that is?

A. Yes.

Q. And what is it?

A. I know what it is but I don't recall writing that letter.

Q.   Would you look at page two and tell me if that is your signature?

A.   It looks like it.

Q.   And what is the date of the letter?

A.   August 22nd, 1989.

Q.   So you are not going to tell the court that you didn't write this letter; are you?

A.   I don't recall writing it.

Q.   You don't recall writing it.  Are you saying you didn't write it?

A.   I just don't recall writing it.

Q.   Okay.  Is it entirely possible that you did write it?

A.   No.

MR. CALDWELL:  Objection, form, speculation.

Q.   (By Mr. Ogle) I am asking you if it is possible that you wrote this letter.

MR. CALDWELL:  Objection, form.  You can go ahead and answer.  I have to object as to form.

THE WITNESS:  Yes, it is possible but I don't remember it.

Q.   (By Mr. Ogle) Do you have a theory for who you think wrote it?

A.   No.  All I can say is that I was -- I had been

ill with glaucoma. That is in the letter here. And also, I was grieving for my mother who passed away the year before.

Q. All right. I want to draw your attention to a paragraph, one of the paragraphs in this letter. It is the third paragraph. And at the last part of that paragraph, I think it is the last three sentences, this letter says Victor and Ivarene Hosek own half of the oil and mineral rights for another 14 years. Then you will get their half. I want to keep my half for another 30 years if possible. So is this a letter from you to Mr. Wesley King? Is that what this is?

MR. CALDWELL: Object as asked and answered.

Q. (By Mr. Ogle) Is this a letter from you to Wesley King?

A. I don't remember writing it or sending it.

Q. So you don't think that you said any of these things in this letter?

A. I don't know.

Q. So you couldn't tell me what you meant when you said that, if you don't remember it; is that right?

A. Yes.

Q. This letter would indicate it was written by you that you knew that after 25 years, the mineral

ownership would go back to the surface owner. Could you agree with me on that?

MR. CALDWELL: Objection, form.

THE WITNESS: This is not a legal document.

Q. (By Mr. Ogle) I am just asking you to answer my question. I am not asking you whether it is a legal document. If you had written that, it would indicate that you knew that the 25 year period was a period after which the surface owner would own the minerals under their land. Isn't that right? Isn't that what it says?

A. I don't know.

Q. You don't know what it says?

A. I don't know.

Q. When did you first see this letter?

A. Well, when it was sent to me by Mr. Caldwell.

Q. And do you know where it came from?

A. I don't know.

Q. Do you know if it came from Mr. King?

A. I don't know.

Q. You don't know anything about it? Date of the letter is August 22, 1989 so that would have been 10 years, 11 years after the partition deed; is that right?

A. How long, I don't know.

Q. The date on the letter in front of you is

August 22, 1989; is that right?

A.   That's right.

Q.   So I am asking you to agree with me that that is 10 and a half years after the 10 years after the partition deed is dated?

A.   Yes.

Q.   So if you did say there is another 14 years, then you will get their half to Mr. King, you would have indicated that after the 25 year period, that the surface owners would own their minerals; isn't that right?

MR. CALDWELL:  Objection, form, speculation.

Q.   (By Mr. Ogle) You can still answer the question.

A.   I don't remember the letter.  I don't remember writing it.

Q.   Okay.

A.   I had been ill and sometimes I forget things when I am sick.

Q.   Well, isn't this when you were negotiating the sale with Mr. King?  Isn't this a period of time that you were negotiating the sale to Mr. King?

A.   I'm sorry.  I can't hear you.

Q.   Isn't this the time that you were negotiating

the sale to Mr. King?

A. Yes.

Q. And so you remembered before that you negotiated about 30 years versus 20 years. You remembered that.

A. Yes.

Q. And that happened around the same time as this letter was written; correct?

A. Well, yeah. I don't know. I don't know.

Q. So you remembered that part of the negotiation but you don't remember this letter.

A. No, I don't. I don't remember writing it.

Q. Did you have an attorney representing you when you were negotiating the sale to Mr. King?

A. Mr. Steinle.

Q. Okay. And so would Mr. Steinle have documents perhaps about these negotiations?

A. I don't know.

Q. When did when were you approached about signing a quit claim deed for the purposes of oil and gas drilling on this property?

A. My husband passed away in January, January 3rd, and it was soon after that. I don't know, February, March.

Q. Of what year?

A. This year.

Q. And who approached you about signing a quit claim deed?

A. Ivarene called me and told me that the oil company representative was going to send me a paper to sign. She didn't say quit claim. She said a paper.

Q. And did the oil company send you a paper to sign?

A. Yes.

Q. And what did they say?

A. And they called me too. Mr. -- I can't remember his name but.

Q. So you had the opportunity to talk directly to the oil company representative about this quit claim deed; didn't you?

A. Yeah, I guess he said a quit claim on the phone. I think he did.

Q. Did he explain to you what it was and why it was needed?

A. No.

Q. And so what did you do with this quit claim deed?

A. Well, he sent it. And when I got it, I read it. And my question was why, why would I have to sign anything now after all of these years? Why would I have

to sign a quit claim? I called my daughter and she said no, don't sign it. And I talked to several people. I talked to my cousins. I even called Lutheran Thrivent Financial. I talked to -- I believe it was an attorney there who told me do not sign that. Do not sign the quit claim.

MR. CALDWELL: Don't talk about any conversations with attorneys because those are attorney/client privilege.

THE WITNESS: I am not sure if it was attorney. I talked to him on the phone. Maybe not. I don't know.

MR. CALDWELL: Okay.

Q. (By Mr. Ogle) Do you remember the name of the person you talked to?

A. No.

Q. What is your cousin's name that you talked to?

A. Cousin?

Q. The cousin you talked to, what is that cousin's name?

A. Her name is Willadene Kyrish, K-Y-R-I-S-H.

Q. And why did you call her or why did you think she would have some special knowledge about this?

A. I called her -- well, we talk on the phone sometimes. She calls me sometimes. Especially since my

husband passed away. They have been -- always asked if they can help me. Okay. My daughter and my son-in-law said you need an attorney.

Q. Which daughter?

A. Diane.

Q. Okay.

A. And Gilbert, my son-in-law.

Q. Okay.

A. And so I called -- I called Willadene and asked her if she knew of an attorney because I need one.

Q. Okay. And she did she refer you to a lawyer?

A. Yes, she did.

Q. What lawyer did she refer you to?

A. I can't remember his name, not right now I can't.

Q. When you get this deposition, can you fill that in for me so I will know who?

A. All right.

Q. Was it a San Antonio lawyer or a Floresville lawyer or a New Braunfels lawyer?

A. San Antonio.

Q. And you talked to that lawyer and did you talk to that lawyer in San Antonio?

A. Well, my son-in-law tried to get an appointment. In fact, he did get an appointment with

that attorney. And then that attorney called him back and told him that he could not represent me because there was a conflict of interest.

Q. Okay. That is all you need to say. You shouldn't tell me anything that he actually told you substantive. Okay. And so then what did you do?

A. My daughter looked on the internet to find an attorney for me. Diane, she found Mr. Caldwell for me.

Q. Okay. And did you hire Mr. Caldwell?

A. Yes.

Q. Did you sign a contract with Mr. Caldwell?

A. Yes.

Q. Have you paid any fees to Mr. Caldwell?

A. Well, just I think it was 2500 for -- I don't know -- what do they call it? I can't remember.

MR. CALDWELL: Retainer?

THE WITNESS: Yeah, retainer.

Q. (By Mr. Ogle) Okay. And are you paying him hourly or are you paying him under a contingency contract?

A. Contingency, yeah, contingency now, yeah.

Q. And so do you pay now. So you were paying hourly for a while and then you went to contingency; is that right?

A. He took it like that, yeah.

Q.   I don't think you got over on him.

A.   What?

Q.   I'm sorry.  I was being flippant.  So it started out hourly and then it went to a contingency contract; is that right?

A.   The retainer was --

Q.   I see.

A.   -- first.  And then, yeah, it is a contingency contract.

Q.   Okay.  If you were in a position where you were standing in front of the judge telling the judge what you think that partition deed said and what it means, what would you tell him?

A.   I think that -- what I think it says is that it would be renegotiated after the 25 year period.

Q.   And so even if it doesn't say that, that is what it should have said; is that right?

A.   Well, that was my understanding.

Q.   So if it didn't say that, it was wrong; is that right?

A.   Okay.

Q.   You can't look at your --

MR. CALDWELL:  You can answer if you understand his question.

THE WITNESS:  If it didn't say that, it

was wrong.  I don't know.  I don't know.

Q.    (By Mr. Ogle) You don't really know what the deed says?

MR. CALDWELL:  That is not what she said.

Q.    (By Mr. Ogle) Do you really know what the deed says?

A.    Yes.

Q.    What does it say?

A.    25 years.  But that was -- I thought it or I understood that it would be renegotiated after 25 years.

(Exhibit 4 marked)

Q.    (By Mr. Ogle) I am going to hand you -- my exhibits are all out of order, I apologize -- what is Exhibit Number 4 and see if you can identify that, please, ma'am.  Can you tell me what that is?

A.    That was a letter that Mr. Wetherbee decided -- that was Mr. Wetherbee's idea.  It was never my idea.

Q.    Who is Mr. Wetherbee?

A.    The attorney.

Q.    What attorney?  Is he your attorney?

A.    He was in the same office as Mr. Steinle.

Q.    Who went and talked to Mr. Wetherbee.

A.    Well, I was talking to him about selling the --

MR. CALDWELL:  Mrs. Scott, if he is your attorney, you can't testify about what you and your

attorney talked about; okay?

THE WITNESS: Okay.

MR. CALDWELL: So you can't testify about what you and Mr. Wetherbee discussed. You understand?

THE WITNESS: Okay.

Q. (By Mr. Ogle) We will dance around that. Did you go to Mr. Wetherbee for help, legal help?

A. I'm sorry. I can't hear.

Q. Did you go to Mr. Wetherbee for legal help?

A. Yes.

Q. And what help were you asking for?

MR. CALDWELL: I'm sorry. That would be -- you can't discuss what you asked Mr. Wetherbee to do for you. You can give your understanding -- you can explain why you went to go see an attorney.

THE WITNESS: Why I went to see him?

MR. CALDWELL: Yes.

THE WITNESS: To sell the 60 acres.

Q. (By Mr. Ogle) Okay. And were you talking -- were you negotiating selling the 60 acres at that time?

A. I don't understand the question.

Q. Were you negotiating? Okay. Look at the date on this letter.

A. The date, okay.

Q. What is the date? What is the date?

A.    December 6, 1985.

Q.    Okay.  So at that time, December 6, 1985, you you were looking into negotiating selling your property; is that correct?

A.    Yes.

Q.    And was that the Morales sale that you were negotiating?·

A.    Yes.

Q.    And did you go do Mr. Wetherbee as part of these negotiations?  Just yes or no.  Don't tell me anything you said to him or he said to you.

A.    Yes.

Q.    So you went to Mr. Wetherbee to help you figure out how to sell the land to the Moraleses?

A.    Yes.

Q.    Did the Moraleses want the minerals?  Is that what was happening?

A.    Yes, they sure did.

Q.    And you -- Mr. Wetherbee, when this letter was written to Mr. and Mrs. Hosek, he was representing you; is that right?

A.    Yes.

Q.    And so why did you have this letter written to Mr. and Mrs. Hosek?  What did you want to accomplish?

A.    I didn't ask him to write it.  He decided to

write this letter.  I never agreed to it.

Q.  On his own, did you tell him not to send this letter?

A.  He might have asked me if he could write the letter but --

MR. CALDWELL:  Mrs. Scott, you can't go into the substance of what you and Mr. Wetherbee talked about.  Okay?

THE WITNESS:  All right.

MR. CALDWELL:  You can explain -- did you authorize him to send this letter or know it was going out?

THE WITNESS:  Well, yes, I did.

Q.  (By Mr. Ogle) And what do you believe it is asking for?  What do you think this letter is asking for?

A.  That we would exchange the oil and mineral rights there, that my sister would get all of her interest in the minerals under the surface if I would do the same, you know, exchange.

Q.  Instead of waiting for the 25 year period?

A.  Yeah.  I don't know exactly what he was doing. He was the attorney.  I don't -- I didn't know anything about that.

Q.  Did the Moraleses want the minerals under their

60 acres?  Did the Morales want their minerals under the 60 acres did they want them?

A.    Yes.  Yes.

Q.    And did you ultimately sell it to them without the minerals?

A.    I thought I had kept one-half.  I wanted to keep my half.  I thought I had kept one-half.  When I looked at the deed, it said seller reserves her interests, you know.  And there is no date, no date on it, no time.

Q.    Did -- after 2004, were you ever approached for an oil and gas lease after 2004?

A.    2004, no, no, I don't know.  I didn't think so.

Q.    Did any oil company -- did anybody ever approach you for an oil and gas lease on your 130 acres?

A.    After 2004?

Q.    At any time, at any time?

A.    I don't recall.

Q.    So you don't think that happened?

A.    No, I don't recall.

MR. OGLE:  All right.  If we could take about a five minute break, I am pretty close.

(Recess taken)

Q.    (By Mr. Ogle) We are back on the record, Mrs. Scott.  Did you want to say something about Exhibit

27835 Bonn Mountain
San Antonio TX 78260

August 22, 1989

Mr. Wesley King
4211 Weslow
Houston TX 77087

EXHIBIT
5

Dear Mr. King

How are you getting along?  I hope you and your family are well.  It has been a long, hot and dry summer.  Sorry to be so slow in writing to you.  I have had a few health problems.  I developed Acute Glaucoma and have had laser surgery in both my eyes.  I inherited the condition since my mother had it. It would have been less severe if the doctors I visited had made the proper diagnoses.  Although I had the symptoms for six months and visited two doctors (one was an Ophthalmologist), they both made an incorrect diagnoses, and I had to go to the hospital emergency room on July 4th.  The emergency room doctor made an immediate diagnoses of glaucoma and I spent two days in the hospital.  Then I had an allergic reaction to the medication I was given to get the pressure and pain down in my eyes, so I am just now getting back to normal again.

I was kind of surprised when you called and said you are still interested in buying the farm land I still have left.  The Texas economy is so bad right now. But I am ready to sell if you still want to buy it without oil and mineral rights.  In 1983, I was offered $120,000.00 for the whole place (130 acres) but oil and mineral rights were included.

Hugh had planned to tear down the tractor shed, and use the materials when we build a home in LaVernia.  But, since we have not been able to sell our present home here in Bulverde, he says there is no reason to tear it down since our plans to build have been delayed.  He says the shed is worth $3,000; therefore, I would like $53,000.00 total price for the property (about $750 per acre).  If possible, I would like $23,000 down payment and the balance ($30,000) in payments at 10 percent interest for ten years.  Victor & Ivarene Hosek own half the oil and mineral rights for another 14 years.  Then you will get their half.  I want to keep my half for another 30 years, if possible.

If it is agreeable with you to let Mr. Kolodzie continue his lease until mid February 1990, I will contact a lawyer as soon as possible and get the legal documents prepared.  As slow as those lawyers are (from my experience), it may be 1990 before they get the papers ready anyway.  We had the whole place surveyed in 1985 so another survey should not be required unless you want another survey.  I will pay for the lawyer's fees.

Is hard for me to explain how I feel about that place.  There are so many memories there, but most of them are unhappy, disappointing memories like hard, back-breaking work (my parents believed in child labor), my parents' constant fighting, and being denied a high school education which limited my opportunities for the rest of my life.  My father was an alcoholic and my mother had a nervous breakdown when I was a baby and she never really recovered.  She had such a lonely, unhappy life.

I guess the reason I'm telling you all this is that I have to convince myself that I am better off selling the place. Perhaps then I can say in my mind "its over" and I'm better off letting it go. Going there and thinking about the past only depresses me and makes me feel bad, and no one can change the past. It has been hard for me to decide to sell, but I have finally made the decision.

So, let me know if you still want to buy the place. If you object to any of the conditions I mentioned. let me know and we can talk about it. Perhaps, we should meet somewhere to discuss all this in person before I get the legal papers prepared in final. If you will call me the next time you plan to go down to your farm, we will try to meet you there to talk about all this.

I have not yet signed up for the McCoy water. Mr. Kolodzie sent me two copies of his letter, but he forgot to enclose the information sheet, so if you want the water, please send me a sign-up sheet and I will fill it out and send it to the water company. I tried twice before, but nothing happened anyway, so I guess I don't feel very optimistic about any progress in that area.

Well, I must close, and I hope to hear from you soon. Take care.

Sincerely

Rosale E. Scott
Rosale E. Scott

CAUSE NO. 13-06-0559-CVA

| IVARENE HOSEK AND VICTOR HOSEK, | ) IN THE DISTRICT |
| Plaintiffs | ) |
| VS. | ) 81ST JUDICIAL DISTRICT |
| ROSALE SCOTT, | ) |
| Defendant | ) ATASCOSA COUNTY, TEXAS |

REPORTER'S CERTIFICATE

ORAL DEPOSITION OF ROSALE SCOTT

NOVEMBER 1, 2013

I, Sarah A. Prugh, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, ROSALE SCOTT, was duly sworn and that the transcript of the deposition is a true record of the testimony given by the witness;

That the deposition transcript was duly submitted on ___11-15-13___ to the witness or to the attorney for the witness for examination, signature, and return to me by ___12-09-13___.

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record and the amount of time used by each party at the time of the

deposition:

Mr. Robert J. Ogle (1h27m)
        Attorney for Plaintiffs
Mr. G. Wade Caldwell (0h0m)
        Attorney for Defendant

That a copy of this certificate was served on all parties shown herein on ___12-09-13___ and filed with the Clerk.

I further certify that I am neither counsel for, related to, nor employed by any of the parties in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of this action.

Further certification requirements pursuant to Rule 203 of the Texas Code of Civil Procedure will be complied with after they have occurred.

Certified to by me on this 10th day of November, 2013.

Sarah A. Prugh, CSR
Texas CSR 3972
Expiration: 12/31/15
Firm Registration Number 631
Kim Tindall & Associates, LLC
645 Lockhill Selma, Suite 200
San Antonio, Texas 78216
210-697-3400

FURTHER CERTIFICATION UNDER TRCP RULE 203

The original deposition was/was not returned to the deposition officer on ___12-04-13___ .

If returned, the attached Changes and Signature page(s) contain(s) any changes and the reasons therefor.

If returned, the original deposition was delivered to Mr. Robert J. Ogle, Custodial Attorney.

$10.20 is the deposition officer's charges to the Plaintiffs for preparing the original deposition and any copies of exhibits;

The deposition was delivered in accordance with Rule 203.3, and a copy of this certificate, served on all parties shown herein; was filed with the Clerk.

Certified to by me on this ___9th___ day of ___Dec.___ , ___2013___ .

By BW

_Sarah A. Prugh_

Sarah A. Prugh, CSR
Texas CSR 3972
Expiration: 12/31/15
Firm Registration Number 631
Kim Tindall & Associates, LLC
645 Lockhill Selma, Suite 200
San Antonio, Texas 78216
210-697-3400

Electronically signed by Sarah Prugh (201-387-426-3457)     6bd34b3b-f084-4322-a027-d4fd46844481b